# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| **TARA KING, ED.D.**, individually and on behalf of her patients, **RONALD NEWMAN, PH.D.**, individually and on behalf of his patients, **NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH), AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC)**, <br><br> Plaintiffs, <br><br> v. <br><br> **CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, **ERIC T. KANEFSKY**, Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs, in his official capacity, **MILAGROS COLLAZO**, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, in her official capacity, **J. MICHAEL WALKER**, Executive Director of the New Jersey Board of Psychological Examiners, in his official capacity; **PAUL JORDAN**, President of the New Jersey State Board of Medical Examiners, in his official capacity, <br><br> Defendants. | Case No. _____ |

---

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND NOMINAL DAMAGES

The Plaintiffs in this case are Dr. Tara King, 522 Brick Blvd., Brick, New Jersey 08723, Dr. Ronald Newman, Linwood Professional Plaza, Suite 9, 2021 New Rd. Linwood, New Jersey 08221, the National Association for Research and Therapy of Homosexuality, 5282 S.

Commerce Drive, Suite D-272, Murray, Utah 84107, and the American Association of Christian Counselors, 129 Vista Centre Dr., Forest, Virginia 24551. The Defendants in this case are Governor Chris Christie, P.O. Box 001, Trenton, New Jersey 08625, Eric Kanefsky, Director of the New Jersey Department of Law and Public Safety, Division of Consumer Affairs, 124 Halsey Street, Newark, New Jersey 07102, Milagros Collazo, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, P.O. Box 45007, Newark, New Jersey 07101, J. Michael Walker, Executive Director of the New Jersey Board of Psychological Examiners, P.O. Box 45017, Newark, New Jersey 07101, Paul Jordan, President of the New Jersey State Board of Medical Examiners, P.O. Box 183, Trenton, New Jersey 08625.

COME NOW Plaintiffs, DR. TARA KING, DR. RONALD NEWMAN, on behalf of themselves and their patients, NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY ("NARTH"), and the AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS ("AACC") (collectively "Plaintiffs"), by and through counsel and file this civil action to respectfully request this Court to issue Injunctive and Declaratory Relief and award nominal Damages for constitutional violations described below. In support, Plaintiffs aver unto the Court as follows:

## INTRODUCTION

1.      Plaintiffs bring this civil action to challenge the constitutionality of New Jersey Assembly Bill Number 3371, "An Act concerning the protection of minors from attempts to change sexual orientation," ("A3371"), and to prevent A3371 from violating their respective federal and state constitutional guarantees of Freedom of Speech, Free Exercise of Religion, and the minor patient. **This law went into full effect immediately, upon being signed by Governor Christie on August 19, 2013, and thus time is of the essence to obtain judicial relief because**

**Plaintiffs, their clients, and the members of the Plaintiff Associations are currently suffering immediate and irreparable injury to their most cherished constitutional liberties.**

2.      Plaintiffs Dr. Tara King, Dr. Ronald Newman, and other NARTH members in and outside of New Jersey, as well as AACC members in and outside of New Jersey who either engage in or refer to someone who engages in licensed counseling that honors a client's autonomy and right to self-determination to prioritize their religious and moral values above unwanted same-sex sexual attractions, behaviors, or identities and who want to align their values with a licensed counselor who can address these values, have the First Amendment and state constitutional rights as licensed counselors, as do their clients, to engage in, receive and exercise constitutionally protected speech and religious freedom, which includes their clients' right of self-determination, their right to provide and receive effective counsel based on their religious and moral values, and their right to counsel their clients without governmentally imposed and unconstitutional viewpoint-based restrictions.

3.      By preventing minors from seeking counseling from to address the conflict about or questions concerning their unwanted same-sex sexual attractions, behaviors, and identities and from seeking to reduce or eliminate their unwanted same-sex sexual attractions, behaviors, or identities through counseling such as sexual orientation change efforts ("SOCE"), A3371 denies or severely impairs Plaintiffs' clients and all minors their right to self-determination, their right to prioritize their religious and moral values, and their right to receive effective counseling consistent with those values.

4.      By denying Plaintiffs' clients and all minors access to counseling from licensed counselors that can help minors who desire to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, A3371 infringes on the fundamental rights of Plaintiffs' clients,

and the rights of the parents of Plaintiffs' clients to direct the upbringing and education of their children, which includes the right to meet each child's individual counseling, developmental, and spiritual needs.

5.     By prohibiting them from engaging in any efforts that seek to eliminate or reduce unwanted same-sex attractions, behaviors, or identity, even when the client, the parents, and the psychotherapist all consent to the counseling and therapeutic intervention, A3371 also violates the constitutional rights of licensed mental health counselors, including Plaintiffs Dr. King, Dr. Newman, and other members of NARTH and AACC, who practice SOCE counseling or who refer to someone who does practice SOCE counseling.

6.     Despite the value and benefit that Plaintiffs have provided by offering SOCE counseling, Defendants have passed and are enforcing A3371 to stop all SOCE counseling by licensed professionals, which is causing immediate and irreparable harm to all Plaintiffs and Plaintiffs' clients, including the counselors and their clients represented by the Plaintiff Associations.

7.     A3371 harms minors, their parents/guardians, and licensed counselors by prohibiting minors and their parents/guardians from obtaining the counseling services they choose, after receiving full disclosure and providing informed consent, to resolve or reduce unwanted same-sex sexual attractions, behaviors, or identity and harms counselors by placing them in a catch-22 in which they will be forced to choose between violating ethical codes by complying with A3371 or violating the law by failing to comply with A3371.

8.     By denying minors the opportunity to pursue a particular course of action that can most effectively help them address the conflicts between their desire to be free of unwanted same-sex attractions, behaviors, or identity and their experience of feeling same-sex attractions,

behavior, or identity, A3371 is causing those minors confusion and anxiety over same-sex sexual attractions, behaviors, and identity that the minors must balance, resolve, and/or eliminate, and it is infringing on their free speech and religious liberty rights.

9. Consequently, Plaintiffs seek preliminary and permanent injunctive relief enjoining Defendants from enforcing A3371 because it violates: (1) the rights of Plaintiffs and their clients to freedom of speech and free exercise of religion, guaranteed by the First and Fourteenth Amendments to the United States Constitution, and (2) the rights of Plaintiffs and their patients to liberty of speech and free exercise and enjoyment of religion, guaranteed by Article I, §§ 3, 5, and 6 of the New Jersey Constitution, and (3) the Fourteenth Amendment rights of the parents of Plaintiffs' clients to direct the upbringing of their children.

10. Plaintiffs also seek declaratory relief from this Court declaring that A3371 is unconstitutional on its face and as applied.

## JURISDICTION AND VENUE

11. This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article I, §§ 3, 5, and 6 of the New Jersey Constitution.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

13. This Court is authorized to grant the Plaintiffs' prayer for relief regarding costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

14. This Court is authorized to grant declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue the preliminary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65.

15.     Venue is proper under 28 U.S.C. § 1391(b). Each and all of the acts alleged herein were done and are being done by Defendants, and each of them, not as individuals, but under the color and pretense of statutes, ordinances, regulations, customs, and uses of the United States of America and of the State of New Jersey.

## PARTIES

### Plaintiffs

16.     Plaintiff Dr. Tara King is a Licensed Professional Counselor, a certified Substance Awareness Coordinator, a Licensed Clinical Alcohol and Drug Counselor, and the Founder of King of Hearts Counseling Center, LLC, in New Jersey.

17.     Plaintiff Dr. Ronald Newman is a New Jersey licensed psychologist, a Board Certified Professional Christian Counselor, and the Founder of the Christian Counseling Consortium of South Jersey.

18.     Plaintiff National Association for Research and Therapy of Homosexuality ("NARTH"), is a nonprofit, professional, scientific organization incorporated under the laws of the State of Utah. NARTH has members who reside and practice in New Jersey, and also has members outside of New Jersey, some of whom are licensed in New Jersey.

19.     Plaintiff American Association of Christian Counselors ("AACC") is a nonprofit professional, scientific association, founded in 1989 and headquartered in the Commonwealth of Virginia with 50,000 members located in New Jersey and throughout the world. AACC's clinical members include Licensed Professional Counselors, Licensed Mental Health Counselors, Licensed Marriage & Family Therapists, Licensed Clinical Social Workers, Licensed Clinical Psychologists, Licensed Substance Abuse Treatment Providers, Clinical Nurse Specialists, and Psychiatrists.

**Defendants**

20.    Defendant Christopher J. Christie is Governor of the State of New Jersey and is responsible for executing the laws of New Jersey.

21.    Defendant Eric T. Kanefsky is Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs and is responsible for overseeing the departments charged with civil rights, enforcement, consumer protection, and licensure and professional ethics of New Jersey's working professionals.

22.    Defendant Milagros Collazo is Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, which is responsible for regulating the practice of marriage and family therapy and taking action against the unprofessional, improper, unauthorized, or unqualified practice of marriage and family therapy.

23.    Defendant J. Michael Walker is Executive Director of the New Jersey Board of Psychological Examiners, which is responsible for licensing and regulating psychologists.

24.    Defendant Paul Jordan is President of the New Jersey State Board of Medical Examiners, which is responsible for licensing medical professionals, adopting regulations, determining standards of practice, investigating allegations of physician misconduct, and disciplining those who do not adhere to requirements, including psychiatrists.

**GENERAL FACTUAL ALLEGATIONS**

25.    Following the New Jersey Legislature's passage of A3371, Defendant Governor Christie signed A3371 on Monday, August 19, 2013, which amended Title 45 of the Revised Statutes of New Jersey, and **the law went into effect immediately**. A3371 is attached hereto as Exhibit A and incorporated herein by reference.

26.    Section 2(a) of A3371 states:

"A person who is licensed to provide professional counseling under Title 45 of the Revised Statutes, including, but not limited to, a psychiatrist, licensed practicing psychologist, certified social worker, licensed clinical social worker, licensed social worker, licensed marriage and family therapist, certified psychoanalyst, or a person who performs counseling as part of the person's professional training for any of these professions, shall not engage in sexual orientation change efforts with a person under 18 years of age."

27.    Section 2(b) of A3371 states:

"[S]exual orientation change efforts" means the practice of seeking to change a person's sexual orientation, including, but not limited to, efforts to change behaviors, gender identity, or gender expressions, or to reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender; except that sexual orientation change efforts shall not include counseling for a person seeking to transition from one gender to another, or counseling that:

(1) provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and

(2) does not seek to change sexual orientation.

28.    Section 3 of A3371 states that "[t]his act shall take effect immediately."

29.    General Principle E of the American Psychological Association's *Ethical Principles of Psychologists and Code of Conduct* ("*APA Code*") includes the following: "Psychologists respect the dignity and worth of all people, and the rights of individuals to privacy, confidentiality, and **self-determination**." (emphasis added.)

30.    A3371 directly interferes with Plaintiffs' clients' right to self-determination, and the right of their parents to determine and direct the upbringing and education of their minor children, including the well-being of their spiritual needs.

31.    Section 3.04 of the *APA Code*, "Avoiding Harm," further states: "Psychologists take reasonable steps to avoid harming their clients/patients . . . and to minimize harm where it is foreseeable and unavoidable."

32.     Because the *APA Code* already prohibits harming patients, A3371 is unnecessary and evidences an attempt to suppress the viewpoints of those who seek, who offer, or who refer to someone licensed to provide SOCE or other spiritual or value-based counseling.

33.     Section 1(a) of the *American Psychiatric Association Guidelines for Ethical Treatment* ("*APA Guidelines*") states: "A psychiatrist shall not withhold information that the patient needs or reasonably could use to make informed treatment decisions, including options for treatment not provided by the psychiatrist."

34.     A3371 mandates psychiatrists to violate Section 1(a) of the *APA Guidelines* by forcing them to withhold information that a patient reasonably could use to make informed treatment decisions.

35.     By mandating that SOCE counseling options not be discussed or engaged in by licensed psychiatrists, or even make referrals to others who provide SOCE counseling, clients will not be able to make informed decisions, and the psychiatrists will be violating the ethical code by imposing their own views and value judgments upon their clients.

36.     Section 1(c) of the *APA Guidelines* states: "A psychiatrist shall strive to provide beneficial treatment that shall not be limited to minimum criteria of medical necessity."

37.     A3371 mandates that licensed psychiatrists violate Section 1(c) of the *APA Guidelines* by prohibiting them from providing beneficial SOCE counseling to those clients who willingly consent to and desire such counseling to alleviate their unwanted same-sex sexual attractions, behaviors, or identity.

38.     Opinion 10.01(2) of the *American Medical Association Code of Ethics* ("*AMA Code*") states: "The patient has the right to make decisions regarding the health care that is

recommended by his or her physician. Accordingly, patients may accept or refuse **any** recommended medical treatment." (emphasis added).

39.     A3371 requires that medical professionals violate this provision of the code of ethics by prohibiting them from allowing patients to make any decision regarding the availability and benefits of SOCE counseling by a licensed professional.

40.     A3371 prohibits patients from being able to accept or reject SOCE counseling from a licensed professional, even though the fundamental elements of the patient-physician relationship require that the patient be provided with the full range of available counseling options.

41.     Opinion 10.016 of the *AMA Code* states: "Medical decision-making for pediatric patients should be based on the child's best interest, which is determined by weighing many factors, including effectiveness of appropriate medical therapies, the patient's psychological and emotional welfare, and the family situation. When there is legitimate inability to reach consensus about what is in the best interest of the child, the wishes of the parents should generally receive preference."

42.     A3371 forces physicians to violate this Opinion by removing certain counseling options from the wishes of the parents and their minor children.

43.     A3371 prohibits parents from even having the option to consider whether SOCE treatment from a licensed professional is in the best interest of their child.

44.     Section A.2.d of the *American Counselor's Association Code of Ethics* ("*ACA Code*") states:

> When counseling minors or persons unable to give voluntary consent, counselors seek the assent of clients to services, and include them in decision-making as appropriate. Counselors recognize the need to balance the ethical rights of clients to make choices, their capacity to give consent or assent to receive services, and

parental or familial legal rights and responsibilities to protect those clients and make decisions on their behalf.

45.    Section B.5.b of the *ACA Code* states: "Counselors are sensitive to the cultural diversity of families and respect the inherent rights and responsibilities of parents/guardians over the welfare of their children."

46.    A3371 forces licensed counselors to violate Sections A.2.d and B.5.b of the *ACA Code* by prohibiting them from respecting the rights of the parents/guardians to make the decisions concerning the welfare of their child and minors from self-determination, at least insofar as it entail the choice of a licensed professional counselor.

47.    Section A.4.a of the *ACA Code* states: "Counselors act to avoid harming their clients, trainees, and research participation and to minimize or to remedy unavoidable or unanticipated harm."

48.    A3371 is unnecessary to prevent licensed counselors from harming their minor clients because it is already prohibited.

49.    Indeed, the prohibition on SOCE counseling makes it impossible for licensed mental health providers and counselors to follow the *ACA Code*'s directive to avoid harming their clients when minor clients who desire the now-prohibited SOCE counseling from a licensed professional are unable to determine their own course of counseling that aligns with their religious, spiritual, and moral values.

50.    Principles 1 and 1.2 of the *American Association of Marriage and Family Therapists Code of Ethics* ("*AAMFT Code*") provide that all licensed Marriage and Family Therapists "shall advance the welfare of families and individuals" and shall obtain informed consent from their clients, which generally requires that the client "has been adequately informed of significant information concerning treatment processes and procedures."

51. A3371 arguably prohibits Licensed Marriage and Family Therapists from informing their minor clients about an entire course of treatment—SOCE counseling from a licensed professional—that might benefit them and help them achieves their goals of eliminating or reducing their unwanted same-sex sexual attractions, behaviors, or identity.

52. Principle 1.8 of the *AAMFT Code* provides that licensed marriage and family therapists "respect the rights of clients to make decisions."

53. A3371 will prohibit New Jersey Licensed Marriage and Family Therapists from respecting the rights of clients to make the decisions because the State has already made the decision for every client that may seek counseling from a licensed professional on the issue of sexual orientation—i.e., no one under the age of eighteen can receive such SOCE counseling.

54. Because the State has made the decision for the client, Plaintiffs are hopelessly conflicted between compliance with A3371 and compliance with Principle 1.8 of the *AAMFT Code* and other relevant provisions of the code.

55. Section 1.01 of *Code of Ethics of the National Association of Social Workers* ("*NASW Code*") states that it is a social worker's primary responsibility to promote the well-being of their clients.

56. A3371 purports to advance the compelling interest of protecting children, but it is unnecessary as social workers must already act to promote their client's best interest.

57. Section 1.02 of the *NASW Code* provides that the clients shall have the right to self-determination and that a social worker should only seek to assist the client in achieving his or her goals and objectives for the counseling.

58. A3371 prohibits licensed New Jersey social workers from respecting the rights of the client to self-determination by imposing the State's determination on the course of their

counseling and mandating that only efforts that seek to affirm same-sex attractions, behaviors, and identity are permissible in a licensed counselor's office, even if this collides with the client's religious, spiritual, and moral values.

59.     Section 1.03 of the *NASW Code* provides that social workers must provide sufficient information for the client to make an informed decision about his or her course of care and specifically states that such informed consent must include a discussion of **reasonable alternatives**.

60.     A3371 prohibits any efforts by a licensed professional that seek to eliminate or reduce same-sex attractions, behaviors, or identity, so it prohibits the licensed social worker from providing information to clients about the reasonable alternative available to those clients who desire to change and could benefit from SOCE counseling.

61.     Because A3371 requires licensed social workers to either violate the existing provisions of the *NASW Code* or violate A3371, licensed social workers in New Jersey are hopelessly condemned to discipline for ethical violations regardless of what they do.

62.     In the professional opinion of Plaintiffs, cutting off SOCE counseling from licensed professionals and information to minors that might reduce or eliminate their unwanted same-sex sexual attractions, behaviors, or identity, or to otherwise address the conflicts between their same-sex sexual attractions, behaviors, or identity and their religious, spiritual, and moral values is harmful to minors, their parents/guardians, and to licensed counselors who seek to honor the self-determination of their clients and who seek to provide spiritual counseling to those who seek it.

### Dr. Tara King

63.     Dr. Tara King, a New Jersey resident, earned a Bachelor's Degree in Counseling from the University of Sioux Falls in 1987, a Masters Degree in Christian Counseling from Liberty University in 1993, and a Doctor of Education Degree from Nova Southeastern University in 2000. Dr. King's declaration in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction, filed simultaneously with this Complaint is hereby incorporated by reference.

64.     Dr. King became certified as a Licensed Professional Counselor in 1999. She is also a specialist in substance abuse counseling, and is a certified Substance Awareness Coordinator and Licensed Clinical Alcohol and Drug Counselor.

65.     Dr. King has 23 years of experience in the counseling field, which includes extensive experience helping minors with both their educational and mental health counseling needs.

66.     Dr. King served as a special education teacher and Administrator of Schools for several years. This experience gave her unique insight and an ability to help minors in a variety of situations, including mental health counseling, and it allows her to understand practical approaches to helping those minors with unwanted same-sex attractions, behaviors, or identity.

67.     In 2000, Dr. King founded the King of Hearts Counseling Center ("King of Hearts") in Brick, New Jersey, which is a Christian counseling center that focuses on counseling from a Biblical perspective.

68.     The mission of King of Hearts is to provide holistic health, addressing the emotional, physical, mental, social, and spiritual elements of living and also to integrate the client's sincerely held religious beliefs into the counseling relationship.

69.     King of Hearts has two other licensed mental health professionals who, along with the Director Dr. King, provide counseling on a number of issues, including post traumatic stress

disorder, depression, anxiety, mental difficulties, substance abuse, grief, anger management, eating disorders, co-dependency, sex/love/relationship addictions, and SOCE, which King of Hearts offers to both adults and minors.

70.     Dr. King is a former lesbian who received SOCE counseling, and her life is living proof that SOCE counseling can and does work for some individuals who struggle with unwanted same-sex attractions, behaviors, or identity and seek to reduce or eliminate them.

71.     Dr. King engages in SOCE counseling with those clients who desire to do so because her professional opinion and personal experiences inform her that SOCE counseling is an effective method to assist people who struggle with unwanted same-sex attractions, behaviors, or identity and who desire to conform their attractions, behaviors, and identity to their sincerely held religious beliefs.

72.     Dr. King was sexually abused when she was a child and experienced tremendous trauma from that abuse and from the dysfunctional family in which she was raised.

73.     Dr. King's opinion and experience inform her that such abuse and trauma were the primary causes of her later developing sexual attractions toward other women, and at 16 she was already involved in a same-sex relationship.

74.     Even during that relationship and despite her same-sex sexual attractions, Dr. King did not ever consider herself to be a homosexual, even though that is what many others tried to tell her she was.

75.     When she was 19, Dr. King began mental health counseling to deal with some other mental health issues that resulted from her dysfunctional and traumatic childhood.

76.     During that counseling relationship, her mental health counselor constantly told her that she was a lesbian, that she was born a lesbian, that she would always be a lesbian, and that

she should just accept and embrace herself as a lesbian because there was nothing she could ever do about it.

77. From ages 19-24, Dr. King continued to engage in same-sex relationships as though she were a lesbian.

78. During that entire period, she simply did not understand her same-sex attractions but continued to act on them because no one had ever mentioned that change might be possible and that she did not have to continue a homosexual lifestyle if she did not want to do so.

79. Dr. King's therapist and many others continued to tell her that she was always going to be a lesbian, but after hearing about SOCE from her then lover, of all people, she knew change was possible and wanted to see if she could succeed in changing.

80. Dr. King attended a ministry called Harvest USA, which is a Christian organization that seeks to use the truth of Scripture to help individuals who struggle with unwanted same-sex attractions, behaviors, or identity, and also help individuals who struggle with other sexual issues such as pornography addictions or other sexual addictions.

81. It was at this ministry that Dr. King began to realize that she could change her unwanted same-sex attractions and behavior.

82. Dr. King also began reading *Steps Out of Homosexuality* by Frank Worthen, who was also a former homosexual who had successfully changed.

83. While reading that book, Dr. King began to speak with her girlfriend about it and discussed that she wanted to leave the homosexual lifestyle, which she now knew was possible.

84. It was during one of those conversations with her former girlfriend that Dr. King believed she could change and her Christian faith was a big part of her decision to change.

85.     That day, Dr. King broke up with her girlfriend and made the decision that she was going to change.

86.     For five summers, Dr. King attended programs of Exodus International, which was an organization helping homosexuals to change, and she also frequently attended Worthy Creations, which is another group in Florida for former homosexuals.

87.     Dr. King successfully left the homosexual lifestyle 23 years ago and has experienced the change and reform that her Christian faith has brought into her life.

88.     Because of her success, Dr. King knows that change is possible for other people with unwanted same-sex attractions, behaviors, or identities, and her change is the reason she wanted to use her skills in education and training to begin to help others come to the realization that change is possible for those struggling as she had struggled.

89.     Dr. King founded King of Hearts to establish a place where she could assist people with many different mental health issues, including individuals who struggle with unwanted same-sex attractions, behaviors, or identities.

90.     Homosexuals frequently suffer from multiple mental health issues, and Dr. King, like most other mental health professionals, has had homosexual clients seeking help for depression, anxiety, distress, or other issues who never discussed sexual orientation or expressed a desire to change, so she counseled them on the issues they choose to discuss with her.

91.     Dr. King's approach to counseling is inherently and properly a client centered approach that professional ethics mandate and that is based solely on the client's goals and objectives.

92.     Because it is unethical for her to impose any kind of ideology or framework on her clients, Dr. King does not even raise SOCE discussions unless a client wants to engage in such counseling.

93.     Because Dr. King testified before the legislature on A3371, one of her existing homosexual clients approached her to discuss why Dr. King had never informed her that SOCE counseling was available and that change was possible if the client wanted to reduce or eliminate her unwanted same-sex attractions, behavior, or identity.

94.     Dr. King informed this client that she would have been happy to engage in SOCE counseling with the client, but that the client had never raised the issue in counseling and that Dr. King cannot ethically impose a course of counseling on a client who otherwise does not present with the goal of reducing or eliminating unwanted same-sex attractions, behavior, or identity.

95.     Dr. King respects the desires and directives of all of her clients, including those who are minors. She does not impose her own ideology or thinking on the client, but follows her ethical duty to let the client direct the goals and desires of the counseling relationship.

96.     Dr. King does not engage in SOCE counseling unless the client desires that counseling and provides informed consent to begin such counseling.

97.     Dr. King's form of SOCE is simply talk therapy, and it is not different than any other form of modern mental health counseling.

98.     Dr. King testified before the legislature that the parade of horribles derived from aversion techniques, such as electroshock treatments, the viewing of pornography, nausea-inducing drugs, etc., are all methods of counseling that have not been used by any ethical and licensed mental health professional in decades, and she believes mental health professionals who engage in such practices should have their licenses revoked.

99.     Dr. King's SOCE counseling consists of the traditional psychodynamic process of looking for root causes, childhood issues, developmental factors, and other things that cause a person to present with all types of physical, mental, emotional, and psychological issues that cause distress for the client.

100.     Dr. King's SOCE counseling is insight oriented, just like every other form of modern mental health counseling, and she advocated that it should not be banned merely because some people disagree with the fact that change is possible.

101.     The only difference between Dr. King's form of counseling and the counseling provided by mental health professionals like her former therapist (who insisted she was and always would be a lesbian) is that Dr. King believes that change is possible for those who wish to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

102.     Many of Dr. King's clients seeking SOCE counseling claim that their unwanted same-sex attractions, behaviors, or identity can be traced to abuse, trauma, neglect, and unfulfilled gender identity needs, and many of those clients seeking SOCE counseling were sexually molested by a member of the same sex.

103.     Dr. King was a victim of sexual abuse and trauma as a child, and in her opinion it was one of the root causes of her past unwanted same-sex attractions and behavior.

104.     Dr. King acknowledges and stated in her testimony before the legislature that current science does not support the notion that people are born gay.

105.     The proposition that one is born gay and that same-sex attractions cannot be changed is unsupported by science or reality as Dr. King knows that change is possible for those who desire to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

106.    Dr. King has close friends who are also living proof that change is possible for those who seek to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, and that SOCE counseling can be an effective method by which to achieve such a desired result.

107.    Many of Dr. King's clients, both adult and minor, are Christians and request Christian counseling as part of the SOCE counseling that she provides.

108.    Most of Dr. King's clients specifically choose King of Hearts because of its mission to provide Christian counseling from a Biblical perspective and to incorporate the client's sincerely held religious beliefs into the counseling relationship.

109.    Many of Dr. King's clients who seek SOCE counseling report varying degrees of change from homosexuality to heterosexuality, and she has had clients report that SOCE counseling helped them understand the root causes of their unwanted same-sex attractions, behaviors, and identity and why it was causing them so much stress.

110.    Dr. King has been able to successfully counsel minor clients desiring to remediate their unwanted same-sex attractions, behavior, and identity, and her SOCE counseling has helped many of these minor clients reduce or eliminate their unwanted same-sex attractions and behaviors, alleviate their mental anguish and anxiety caused by their unwanted same-sex attractions, behaviors, and identity, and increase security in their gender identity.

111.    A3371 will prohibit Dr. King from continuing to provide the type of counseling that her clients desire and from which they can benefit tremendously.

112.    A3371 prohibits Dr. King from sharing valuable personal life experiences with her clients and from helping them to see how change is possible in their own lives.

113.    A3371 will prohibit Dr. King from speaking about the potential benefits of SOCE counseling and how she successfully alleviated her unwanted same-sex attractions and behavior.

114.   Dr. King and her clients are suffering and will continue to suffer irreparable harm as a result of A3371, and she will be forced to violate the codes of ethics no matter what she does with respect to clients seeking counseling from a licensed professional to reduce or resolve same-sex sexual attractions, behaviors, or identity.

115.   By prohibiting minors from receiving SOCE counseling from licensed professionals, A3371 has made a portion of Dr. King's practice illegal and unethical.

116.   A3371 also forces Dr. King to violate the requirements of her ethical code because if she complies with A3371, she will violate the code of ethics, and if she does not comply and engages in SOCE counseling or refers to a licensed professional who does, she violates A3371. In addition, A3371 forces Dr. King to refer a client seeking SOCE to an unlicensed counselor if she refers at all), thereby subjecting her to further ethical violations and possibly legal action, because unlicensed counselors are less likely to use the care and professionalism employed by licensed professionals.

117.   In addition to compromising her practice, A3371 infringes on Dr. King's constitutionally protected right to freedom of speech, forcing her to express only one viewpoint on the subject of same-sex sexual attractions, behaviors, and identity, and on SOCE counseling.

118.   A3371 will also substantially interfere with Dr. King's counselor-patient relationship by prohibiting her from counseling consenting minor patients according to their sincerely held religious beliefs.

### Dr. Ronald Newman

119.   Dr. Ronald Newman is a licensed psychologist in New Jersey.

120.   Dr. Newman received his Doctor of Philosophy degree in Psychoeducational Processes in 1990, his Master of Arts degree in Counseling Psychology from Trinity Evangelical

Divinity School in 1980, a Bachelor of Science degree in Psychology from West Virginia University in 1976, and an Associate of Arts degree in Theology from Christ for the Nations Institute in 1978. Dr. Newman's declaration in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction, filed simultaneously with this Complaint is hereby incorporated by reference.

121. Dr. Newman's doctoral dissertation focused on the interaction between religiosity and stress, which makes him uniquely suited to helping clients incorporate their sincerely held religious beliefs into the counseling relationship.

122. Dr. Newman has 32 years of experience as a mental health professional, has been a Licensed Psychologist in New Jersey since 1995, and is a Board Certified Professional Christian Counselor through the American Association of Christian Counselors.

123. In 1998, Dr. Newman founded the Christian Counseling Consortium of South Jersey ("CCC"), which is a consortium of 50 active licensed and unlicensed mental health professionals, counselors, and pastors committed to engaging in counseling from a Christian perspective founded on the inherent truths of Scripture and with approximately 200 people affiliated with the CCC in some manner.

124. Dr. Newman founded the CCC to provide a forum for mental health professionals and counselors to come together to focus on and discuss contemporary issues of concern and to provide mutual support to Christian mental health professionals, church counselors, and pastors.

125. Dr. Newman and the CCC provide Christ-centered training for licensed mental health professionals and others involved in Christian counseling, mental health, and spiritual formation.

126.    The CCC's mission is to encourage and support one another in their service to Jesus Christ through the ministry and vocation of Christian mental health counseling, as well as to cooperate in serving the body of Christ and the community at large.

127.    Dr. Newman derived the mission of the CCC from the Bible in the Book of Galatians chapter 6, verses 9-10, which states, "let us not grow weary in well doing; for in due season we shall reap, if we faint not. As we have therefore opportunity, let us do good unto all men, especially unto them who are of the household of faith."

128.    Dr. Newman founded the CCC to carry this Scriptural command into the field of mental health counseling and seeks to accomplish this purpose through prayer, fellowship, sharing resources, mutual case-consultations, jointly sponsoring education and training events, and other creative resources to help the needs of the community and the individuals who seek mental health counseling consistent with their sincerely held religious beliefs.

129.    Dr. Newman's vision for the CCC is that it will be an organization focused on helping people in need of mental health counseling to conform their lives to their sincerely held religious beliefs, which also includes those adults and minors who struggle with unwanted same-sex attractions, behaviors, or identity.

130.    Dr. Newman is a member of the American Psychological Association ("APA"), the New Jersey Psychological Association, the Christian Association for Psychological Studies, the National Association for Research and Therapy of Homosexuality ("NARTH"), and the American Association of Christian Counselors ("AACC").

131.    Dr. Newman is also the Program Director of the International School of Christian Counseling in Lima, Peru, where he has the primary responsibility for developing the program which is designed to train Christian counselors in Latin America, and he has traveled to various

South American countries 19 times in 20 years to help teach pastors and counselors about effective mental health counseling methods.

132.    Dr. Newman's practice is located in two offices at Hammonton, New Jersey and Linwood, New Jersey, and most of his clients seek his counsel because of his Christian identity and their trust that their Christian values and beliefs will be respected in counseling.

133.    Dr. Newman currently sees approximately 35- 40 clients per week, and he counsels individuals and families concerning stress, panic and anxiety, depression, post-traumatic stress disorder, grief, couples/marital counseling, and many other mental health issues that cause people distress, including individuals and minors who struggle with unwanted same-sex attractions, behaviors, or identity.

134.    For those clients who seek counseling from a Christian perspective and desire to conform their counseling goals to their sincerely held religious beliefs, Dr. Newman focuses on Biblical integration in the counseling relationships he forms with those clients.

135.    Part of Dr. Newman's practice involves SOCE counseling, sometimes with minors who seek such counseling because of their desire to conform their attractions, behavior, and identity to their sincerely held religious beliefs, and he currently has clients who are struggling with issues that would fall under the prohibitions outlined in A3371.

136.    Dr. Newman currently has a minor client who has developed confusion about the client's sexual orientation after engaging in some experimental behavior with a member of the same sex and has raised the issue with Dr. Newman about whether this makes the client a homosexual, which is a situation where A3371 would mandate only one type of counseling.

137.    Many of Dr. Newman's clients seeking SOCE counseling to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity do so because their religious beliefs inform them that change is possible and that SOCE counseling can help them.

138.    Dr. Newman's first step in the counseling relationship, including those involving minors with unwanted same-sex attractions, behaviors, and identity, is to discover what the patient and patient's parents are hoping to achieve with the counseling and to establish the client's particular goals for the counseling.

139.    Dr. Newman's counseling is client centered, and he ensures that the client's goals and objectives are always respected and that they control the counseling relationship.

140.    When minor clients do not want to engage in SOCE counseling, his counseling relationship generally focuses on helping the parents understand the child's thinking, providing psychoeducation about homosexuality among youth, and working within the parent's religious beliefs to help them love and support their child.

141.    When both the minor and the parents desire to engage in SOCE counseling, Dr. Newman explains the nature of the relationship and the types of discussions that are involved in SOCE counseling.

142.    Dr. Newman also explains to the client that if his or her objectives or goals change during the course of the counseling or if his or her same-sex attractions, behaviors, or identity are no longer unwanted, then the client should immediately inform him, as the direction and focus of the counseling will need to change.

143.    Dr. Newman explains to his clients that SOCE counseling has been effective for some people with unwanted same-sex attractions, behaviors, or identity, but that the counseling can sometimes invoke stress or anxiety about past events or root causes.

144.    Some of the individuals who decided to stop SOCE counseling with Dr. Newman still benefitted from the counseling sessions despite deciding that their same-sex attractions, behaviors, or identity were not unwanted.

145.    Dr. Newman and his patients are suffering and, absent injunctive relief, will continue to suffer irreparable harm as a result of A3371.

146.    By prohibiting minors from receiving SOCE counseling, A3371 has made a portion of Dr. Newman's practice illegal and unethical.

147.    A3371 will prevent Dr. Newman's patients from continuing to progress in their individually determined course of counseling, and from continuing to receive counseling in accordance with their sincerely held religious beliefs.

148.    A3371 also leaves Dr. Newman on an irresolvable collision course with the requirements APA Code because if he complies with A3371, he will violate the code of ethics, and if he does not comply and engages in SOCE counseling or refers to a licensed professional who does (and perhaps even if he refers to an unlicensed counselor), he violates A3371.

## NARTH

149.    NARTH is a professional, scientific organization that offers hope to those who struggle with unwanted homosexuality and same-sex attractions, behaviors, or identity. David Pruden's declaration on behalf of NARTH in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction, filed simultaneously with this Complaint is hereby incorporated by reference.

150.    As an organization, NARTH disseminates educational information, conducts and collects scientific research, promotes effective therapeutic treatment, and provides international referrals to those who seek its assistance.

151.    NARTH is engaged in extensive research concerning individuals who have successfully reduced or eliminated their unwanted same-sex attractions, behaviors, or identity or sincerely desire to do so and the psychological factors that are typically associated with a homosexual lifestyle.

152.    NARTH offers scholarly publications and educational information to the general public.

153.    NARTH provides various presentations across the country hosted by mental health professionals who specialize in what is referred to in A3371 as SOCE counseling.

154.    NARTH advocates for an open discussion of all viewpoints concerning SOCE counseling and its potential benefits or harms to patients.

155.    NARTH supports the rights of individuals with unwanted same-sex attractions, behaviors, or identity, including minors, to receive effective psychological care, including SOCE counseling, and the rights of professionals to offer that care.

156.    NARTH does not advocate for or support imposing its ideology on any patient and seeks to offer the course of treatment desired by the patient in accordance with the patient's fundamental right to self-determination.

157.    A3371 prohibits licensed mental health providers from using SOCE, defined as "the practice of seeking to change an individual's sexual orientation."

158.    NARTH's dissemination of educational information regarding homosexuality and promotion of effective therapeutic treatment for homosexuals appears to fall within the category of conduct A3371 prohibits.

159.    Disseminating information and providing referrals will place its licensed professional members at risk of being found in violation of their respective professional codes of conduct.

160.    NARTH members in and outside of New Jersey currently have clients who receive SOCE treatment in and outside of New Jersey.

161.    Some of the clients of NARTH members are minors who will lose all ability to continue receiving the SOCE counseling from licensed professionals that they desire.

162.    These minor clients will suffer regression in their course of treatment as a result of their licensed counselor being prohibited from continuing to offer it.

163.    Licensed NARTH members will continue to have minor clients approach them concerning a desire to reduce or eliminate unwanted same-sex attractions, behaviors, or identity.

164.    Some NARTH members report that five to ten percent of their practice involve SOCE counseling and that nearly half of those seeking such counseling are minors.

165.    A3371 has caused and will continue to cause NARTH and its members to suffer irreparable injury.

166.    Banning SOCE will cause immediate and irreparable harm to minors seeking counseling from licensed professionals, their parents/guardians, and to Plaintiffs and licensed counselors when clients seek such counseling and they are forbidden to offer it or to refer clients to professionals who do.

167.    A3371 also forces NARTH's members to violate the requirements the ethical codes under which they are licensed because if they comply with A3371, they will violate their respective codes of ethics, and if they do not comply and engage in SOCE counseling or refer to someone who does, they will violate A3371.

## AACC

168.    AACC is an international nonprofit professional scientific organization with 50,000 members representing the full spectrum of mental health professionals. Dr. Scalise's declaration

on behalf of AACC in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction filed , filed simultaneously with this Complaint is hereby incorporated by reference.

169.    AACC's mission is to equip its members with distinctively Christian and clinically sound psycho-educational resources and services that address the whole person and which help individuals move toward personal wholeness, interpersonal competence, mental stability, and spiritual maturity.

170.    AACC seeks to encourage and support Christian counseling worldwide; disseminate information, educational resources, and counseling aids; stimulate interaction and mutual growth between mental health practitioners; advocate for the balanced integration of counseling and psychological principles with theology; inspire and offer the highest levels of training and continuing education; and promote ethical practice, integrity, sound research, and excellence in the delivery of professional and pastoral services.

171.    AACC's members adhere to the time-honored and foundational ethical value of client self-determination. AACC's members regard self-determination as a cornerstone principle in the treatment of mental health disorders as found in the language of the ethical codes of notable professional member organizations such as the American Psychological Association (APA), the American Counseling Association (ACA), and the American Association of Marriage and Family Therapists (AAMFT).

172.    AACC's members follow the ethic construct that every client seeking mental health services has the inherent right to participate in treatment that is in alignment with his/her religious beliefs and faith-based values, and furthermore, to have this right vigorously protected.

This ethical construct is severely undermined when members are prohibited from utilizing or even discussing particular types of therapeutic treatment.

173.    AACC's members adhere to the construct that when a client's faith values may be in conflict with other cultural values, such as those expressed by the Legislature in A3371, that ultimately the client—and in the case of a minor, his/her parent or legal guardian—has the moral and ethical right to participate in and determine the appropriate course of care, including alignment with his/her relevant religious beliefs.

174.    A3371 unfairly and unnecessarily discriminates against the religious liberties of licensed AACC's members and their clients and represents an intrusive and potentially damaging dynamic that undermines the delivery of care and the therapeutic relationship.

175.    All Plaintiffs are faced with immediate and irreparable harm because A3371 went into effect immediately when it was signed into law.

176.    The parents of Plaintiffs' clients face immediate and irreparable harm to their rights as parents to provide for the well-being of their children. They will be forced to receive only one viewpoint on same-sex attractions, behaviors, or identity even though that viewpoint conflicts with their religious and moral values.

177.    Plaintiffs' clients face immediate and irreparable harm because effective immediately, they will no longer be able to determine their own destiny because that will be determined by the State, and they will suffer irreparable harm when the licensed counseling they seek and freely chose will be eliminated by A3371. They will be forced to receive only one viewpoint on same-sex attractions, behaviors, or identity even though that viewpoint conflicts with their religious and moral values, or to seek counseling from an unlicensed and largely unregulated practitioners with whom they have no previous therapeutic alliance.

178.    Dr. King, Dr. Newman, NARTH, AACC, and their members, face immediate and irreparable harm because effective immediately, they will be forced to either violate their respective ethical codes by refusing to honor the right of their clients to self-determination and having to impose a state-mandated ideology on them despite their clients objections to the contrary, and if they do honor their clients' self-determination to seek spiritual and values-based counseling to reduce or eliminate their same-sex attractions, behaviors, or identity, they will violate A3371. Their licenses are on the line and their right to freedom of speech will be eliminated because they will be forced to present only one viewpoint on same-sex attractions, behavior, or identity.

179.    Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished liberties and rights under the United States Constitution, and the New Jersey Constitution.

180.    Plaintiffs immediately need immediate injunctive and declaratory relief to prevent these deprivations of their constitutional rights.

### COUNT I – A3371 VIOLATES PLAINTIFFS' RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT.

181.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 180.

182.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' freedom of speech.

183.    A3371, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

184.    A3371, on its face and as applied, discriminates against Plaintiffs' speech on the basis of the content of the message they offer or that Plaintiffs' clients seek to receive.

185.    A3371's prohibition, on its face and as applied, on licensed mental health professionals from offering or referring clients to someone who offers SOCE counseling as a part of their licensed counseling represents unconstitutional viewpoint discrimination.

186.    A3371, on its face and as applied, authorizes only one viewpoint on SOCE and unwanted same-sex sexual attractions, behaviors, and identity by forcing the Counselor Plaintiffs and the licensed members of the Plaintiff Associations to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, behaviors, or identity and forces the Plaintiffs' clients and their parents to receive only one viewpoint on this otherwise permissible subject matter.

187.    Defendants lack a compelling, legitimate, or other significant governmental interest to justify A3371's infringement of the right to free speech.

188.    A3371, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

189.    Informed consent provisions outlining the required disclosure prior to engaging in SOCE counseling with a minor would have been far less restrictive of Plaintiff's speech, and mental health counseling organizations have written letters in the past with similar legislation urging that the legislature adopt informed consent provisions. A copy of the California mental health organizations letter to the California legislature concerning legislation virtually identical to A3371 is attached as Exhibit B and incorporated herein.

190.    A3371 does not leave open ample alternative channels of communication for Plaintiffs.

191.   A3371, on its face and as applied, is irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on constitutionally protected speech.

192.   A3371, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs to freely communicate information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

193.   A3371, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs' clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

194.   A3371's prohibition on licensed mental health counselors offering SOCE counseling that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, behaviors, or identity, which would include a referral to someone who offers SOCE counseling, on its face and as applied, abridges Plaintiffs' right offer and Plaintiffs' clients right to receive information.

195.   By declaring SOCE counseling unprofessional conduct and subjecting licensed mental health counselors who engage in SOCE counseling to professional discipline, including potential license suspension or revocation, A3371, on its face and as applied, represents an unconstitutional condition on the practice of licensed mental health professionals and on their right to free speech.

196.   A3371 vests unbridled discretion in government officials, including Defendants, to grant or deny and to apply or not apply A3371 in a manner to restrict free speech and subjects Plaintiffs and the members of the Plaintiff Associations to ethical code violations.

197.   A3371, on its face and as applied, is impermissibly vague as it requires licensed professionals subject to its dictates and government officials tasked with enforcing it to guess at its meaning and differ as to its application.

198.   A3371, on its face and as applied, is under-inclusive by limiting the prohibition on using SOCE counseling to minors.

199.   A3371, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all licensed mental health providers in the State of New Jersey who use counseling techniques that have the potential help a minor reduce or eliminate his or her unwanted same-sex attractions, behaviors, or identity and does not leave open alternative methods of communication.

200.   On its face and as applied, A3371's violation of Plaintiffs' rights of free speech has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardship and irreparable injury.

201.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT II – A3371 VIOLATES PLAINTIFFS' RIGHT TO LIBERTY OF SPEECH UNDER ARTICLE I, § 6 OF THE NEW JERSEY CONSTITUTION.

202.   Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 180.

203.   Article I, § 6 of the Constitution of the State of New Jersey states, "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press."

204.    Article I, § 6 of the New Jersey Constitution provides greater protection to liberty of speech than does the First Amendment to the United States Constitution.

205.    A3371, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

206.    A3371, on its face and as applied, discriminates against Plaintiffs' speech on the basis of the content of the message they offer or Plaintiffs' clients seek to receive.

207.    A3371's prohibition, on its face and as applied, on licensed mental health counselors from offering or referring clients to another licensed professional who offers SOCE counseling as a part of their practice represents unconstitutional viewpoint discrimination.

208.    A3371, on its face and as applied, authorizes only one viewpoint on SOCE and unwanted same-sex sexual attractions, behaviors, and identity by forcing the licensed Counselor Plaintiffs and the licensed members of the Plaintiff Associations to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, behaviors, or identity and forces the Plaintiffs' clients and their parents to receive only one viewpoint on this otherwise permissible subject matter.

209.    Defendants lack a compelling, legitimate, or other significant governmental interest to justify A3371's infringement of the right to free speech.

210.    A3371, on its fact and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

211.    A3371 does not leave open ample alternative channels of communication for Plaintiffs.

212.    A3371, on its face and as applied, is irrational and unreasonable, and imposes unjustifiable and unreasonable restrictions on constitutionally protected speech.

213.    A3371, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs to freely communicate information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

214.    A3371, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs' clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

215.    A3371's prohibition on licensed mental health counselors offering SOCE counseling that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, behaviors, or identity, which would include any referral to someone who offers SOCE counseling, on its face and as applied, abridges Plaintiffs' right offer and Plaintiffs' clients right to receive information.

216.    By declaring SOCE counseling unprofessional conduct and subjecting licensed mental health counselors who engage in SOCE counseling to professional discipline, including potential license suspension or revocation, A3371, on its face and as applied, represents an unconstitutional condition on the practice of licensed mental health professionals and on their right to free speech.

217.    A3371 vests unbridled discretion in government officials, including Defendants, to grant or deny and to apply or not apply A3371 in a manner to restrict free speech and subjects Plaintiffs and the licensed members of the Plaintiff Associations to ethical code violations.

218.    A3371, on its face and as applied, is impermissibly vague as it requires professionals subject to its dictates and government officials tasked with its enforcement to guess at its meaning and differ as to its application.

219.    A3371, on its face and as applied, is under-inclusive by limiting the prohibition on using SOCE counseling to minors.

220.    A3371, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all licensed mental health providers in the State of New Jersey who use counseling techniques that have the potential help a minor reduce or eliminate his or her unwanted same-sex attractions, behaviors, or identity and does not leave open alternative methods of communication.

221.    On its face and as applied, A3371's violation of Plaintiffs' rights of free speech has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardship and irreparable injury.

222.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT III -- A3371 VIOLATES PLAINTIFFS' CLIENTS' FIRST AMENDMENT RIGHT TO RECEIVE INFORMATION

223.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 180.

224.    The First Amendment, as applied to the states by the Fourteenth Amendment, protects an individuals' freedom of speech, and the flipside of the right to freedom of speech is the right to receive information.

225.    To withstand constitutional scrutiny, restriction on fundamental right of Plaintiffs' clients to receive information must be supported by a compelling state interest and must be narrowly tailored to meet that end.

226.    The Plaintiffs' clients have a sincerely held religious beliefs that shape their desire to receive SOCE counseling and the information that Plaintiffs can provide on reducing or eliminating unwanted same-sex attractions, behaviors, and identity.

227.    A3371 prevents Plaintiffs' clients from receiving the SOCE counseling and deprives them of the opportunity to even obtain the information about SOCE counseling from a licensed mental health professional in New Jersey.

228.    A3371 is not supported by a compelling state interest.

229.    Even if A3371 were supported by a compelling state interest, it is not narrowly tailored to achieve that purpose and therefore violates the fundamental rights of Plaintiffs' clients to receive information.

230.    A3371's violation of the fundamental rights of Plaintiffs' clients has caused, is causing, and will continue to cause undue and actual hardship and irreparably injury.

231.    Plaintiffs' clients have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs pray for the relief against Defendants as hereinafter set forth in their prayer for relief

## COUNT IV – A3371 VIOLATES PLAINTIFFS' RIGHT TO FREE EXERCISE OF RELIGION

232.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 180.

233.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

234.    Many of Plaintiffs' clients and their parents/guardians have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

235.    Plaintiffs and the members of the Plaintiff Associations also have sincerely held religious beliefs to provide spiritual counsel and assistance to their clients who seek such counsel in order to honor their clients' right to self-determination and to freely exercise their own sincerely held religious beliefs to counsel on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their clients.

236.    A3371, on its face and as applied, targets the Plaintiffs' and their clients' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of their sincerely held religious beliefs, and A3371 will cause them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

237.    A3371, on its face and as applied, has impermissibly burdened Plaintiffs' and their clients' sincerely held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them.

238.    A3371's imposition, on its face and as applied, on Plaintiffs is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe change is possible, and thus expressly on its face and as applied constitutes a substantial burden on sincerely held religious beliefs that are contrary to the state-approved viewpoint on same-sex attractions, behavior, or identity.

239.    A3371, on its face and as applied, has unconstitutionally conditioned state licensing on the Plaintiffs and the members of the Plaintiff Associations by requiring them to compromise their clearly established right to the free exercise of religion and belief to obtain the State's license.

240.    The State of New Jersey's alleged interest in protecting minors from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling state interest.

241.    No compelling state interest justifies the burdens Defendants impose upon Plaintiffs' and their clients' rights to the free exercise of religion.

242.    Even if A3371's provisions were supported by a compelling state interest, they are not the least restrictive means to accomplish any permissible government purpose A3371 seeks to serve.

243.    On its face and as applied, A3371's violation of Plaintiffs' and their clients' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs and their clients to suffer undue and actual hardship and irreparable injury.

244.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT V – A3371 VIOLATES PLAINTIFFS' RIGHT TO FREE EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE I, §§ 3 and 5 OF THE NEW JERSEY CONSTITUTION

245.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 180.

246.    Article I, § 3 of the New Jersey Constitution states, "No person shall be denied the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience."

247.    Article I, § 5 of the New Jersey Constitution states, "No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin."

248.    Plaintiffs' clients and their parents/guardians have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

249.    Plaintiffs and the members of the Plaintiff Associations also have sincerely held religious beliefs to provide spiritual counsel and assistance to their clients who seek such counsel in order to honor their clients' right to self-determination and to freely exercise their own sincerely held religious beliefs to counsel on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their clients.

250.    A3371, on its face and as applied, targets the Plaintiffs' and their clients' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of their sincerely held religious beliefs, and A3371 will cause them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

251.    A3371, on its face and as applied, has impermissibly burdened Plaintiffs' and their clients' sincerely held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them.

252.    A3371's imposition, on its face and as applied, on Plaintiffs is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe change is possible, and thus expressly on its face and as applied constitutes a substantial burden on sincerely held religious beliefs that are contrary to the state-approved viewpoint on same-sex attractions, behavior, or identity.

253.    A3371, on its face and as applied, has unconstitutionally conditioned state licensing on Plaintiffs and the members of the Plaintiff Associations by requiring them to compromise their clearly established right to free exercise of religion and belief to obtain the State's license.

254.    The State of New Jersey's alleged interest in protecting minors from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling state interest.

255.    No compelling state interest justifies the burdens Defendants imposed upon Plaintiffs' and their clients' rights to the free exercise of religion.

256.    Even if A3371's provisions were supported by a compelling state interest, they are not the least restrictive means to accomplish any permissible government purpose A3371 seeks to serve.

257.    On its face and as applied, A3371's violation of Plaintiffs' and their clients' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardship and irreparable injury.

258.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully prays for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT VI – A3371 VIOLATES THE PARENTAL RIGHTS OF PLAINTIFFS' CLIENTS UNDER THE FIRST AND FOURTEENTH AMENDMENT

259.   Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 180.

260.   The First and Fourteenth Amendments to the United States Constitution protect the fundamental rights of parents to direct the upbringing and education of their children according to their sincerely held religious beliefs.

261.   To withstand constitutional scrutiny, restrictions on fundamental parental rights must be supported by a compelling state interest and must be narrowly tailored to meet that end.

262.   The parents of Plaintiffs' clients desire that their minor children receive SOCE counseling to assist them in conforming their sexual attractions, behaviors, and identity to their sincerely held religious beliefs.

263.   A3371 prevents the parents of Plaintiffs' clients from seeking mental health counseling for their minor children's unwanted same-sex attractions, behaviors, and identity that conforms to their sincerely held religious beliefs.

264.   A3371 is not supported by a compelling state interest.

265.   Even if A3371 was supported by a compelling interest, it is not narrowly tailored to achieve that purpose and therefore violates the fundamental parental rights of the parents of Plaintiffs' clients.

266.   A3371's violation of the fundamental parental rights of the parents of Plaintiffs' clients has caused, is causing, and will continue to cause those parents to suffer undue and actual hardship and irreparable injury.

267.    The parents of Plaintiffs' clients have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    That this Court issue a Preliminary Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing A3371 so that:

i.    Defendants will not use A3371 in any manner to infringe Plaintiffs' constitutional and statutory rights in the counseling of their clients or from offering a viewpoint on an otherwise permissible subject matter;

ii.    Defendants will not use A3371 in any manner to prohibit Plaintiffs from engaging in SOCE counseling with those minor clients who seek such treatment;

iii.    Defendants will use A3371 to prohibit Plaintiffs' clients and their parents from seeking or receiving SOCE for unwanted same-sex sexual attractions, behaviors, or identity; and

iv.    Defendants will not use A3371 in any manner to punish Plaintiffs or their clients for engaging, referring to, seeking, or receiving SOCE counseling.

B.    That this Court issue a Permanent Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing A3371 so that:

    i.    Defendants will not use A3371 in any manner to infringe Plaintiffs' constitutional and statutory rights in the counseling of their clients or from offering a viewpoint on an otherwise permissible subject matter;

    ii.    Defendants will not use A3371 in any manner to prohibit Plaintiffs from engaging in SOCE treatments with those minor clients who seek such treatment;

    iii.    Defendants will use A3371 to prohibit Plaintiffs' clients and their parents from seeking or receiving SOCE for unwanted same-sex sexual attractions, behaviors, or indentity; and

    iv.    Defendants will not use A3371 in any manner to punish Plaintiffs or their clients for engaging, referring to, seeking, or receiving SOCE counseling.

C.    That this Court render a Declaratory Judgment declaring A3371 and Defendants' actions in applying A3371 unconstitutional under the United States Constitution and New Jersey Constitution, declaring:

    i.    Defendants violated Plaintiffs' and their clients' right to freedom of speech by prohibiting them from providing, referring to, seeking, or receiving information concerning SOCE counseling;

    ii.    Defendants violated Plaintiffs' and their clients' right to free exercise of religion by prohibiting Plaintiffs from providing, referring to, seeking, or receiving information concerning SOCE counseling in accordance with their sincerely held religious beliefs;

    iii.    Defendants violated fundamental right of the Plaintiffs' clients' parents to direct the upbringing and education of their children;

D.      That this Court award Plaintiffs nominal damages for the violation of Plaintiffs' constitutional rights.

E.      That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy so that such declaration shall have the force and effect of final judgment;

F.      That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

G.      That this Court award Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988.

H.      That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.


Respectfully submitted,

/s/ Demetrios Stratis

Demetrios Stratis
New Jersey Bar No. 022391991
Mathew D. Staver*
Stephen M. Crampton*
Daniel J. Schmid*
Liberty Counsel
Attorneys for Plaintiffs
P.O. Box 11108
Lynchburg, VA 24502
Tel. 434-592-7000
Fax: 434-592-7700
court@LC.org

* Application to appear Pro Hac Vice pending


Complaint for Declaratory Judgment, Injunctive Relief, and Nominal Damages - 46