UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

**TARA KING**, **ED.D.**, individually and on behalf of her patients, **RONALD NEWMAN**, **PH.D.**, individually and on behalf of his patients, **NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH)**, **AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC)**,

     Plaintiffs,

v.

**CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, **ERIC T. KANEFSKY**, Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs, in his official capacity, **MILAGROS COLLAZO**, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, in her official capacity, **J. MICHAEL WALKER**, Executive Director of the New Jersey Board of Psychological Examiners, in his official capacity; **PAUL JORDAN**, President of the New Jersey State Board of Medical Examiners, in his official capacity,

     Defendants.

Case No. _____

---

## DECLARATION OF DR. TARA KING

I, Dr. Tara King, hereby declare as follows:

1.   I am over the age of 18 and am one of the Plaintiffs in this action. The statements in this Declaration are true and correct and if called upon to testify to them I would and could do so competently.

2.   I am submitting this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.      I received a Doctor of Education degree in Administration from Nova Southeastern University in 2000. I received a Master of Arts degree in Christian Counseling from Liberty University in 1993, and received another Master of Arts degree in Special Education from New Jersey City University in 2003. In 1987, I received a Bachelor of Arts degree in Counseling from the University of Sioux Falls. In 1999, I became certified as a Licensed Professional Counselor. I am also a specialist in substance abuse related treatment, and have been certified as a Substance Awareness Coordinator and am a Licensed Clinical Alcohol and Drug Counselor. I have extensive experience in helping minors and in being able to meet their needs in both education and counseling. I have served in the education system as both a Special Education Teacher and an Administrator of Schools. That experience gives me a unique perspective and allows me to understand practical approaches to counseling minors and in helping those minors who struggle with unwanted same-sex attractions, behaviors, or identity. My curriculum vitae is attached to this declaration as Attachment A.

4.      In 2000, I founded the King of Hearts Counseling Center in Brick, New Jersey, which is a Christian counseling center that focuses on counseling from a Biblical perspective. The mission of King of Hearts Counseling Center is to provide Holistic Health, addressing the emotional, physical, mental, social, and spiritual elements of life and also to integrate the client's sincerely held religious beliefs into the counseling relationship. There are currently two other licensed mental health counselors at King of Hearts. We offer counseling on numerous issues, including post traumatic stress disorder, depression, anxiety, mental difficulties, substance abuse, grief, anger management, eating disorders, co-dependency, sex/love/relationship addictions, and sexual orientation change efforts ("SOCE") counseling, which we offer to both minors and adults.

5.      I am a former lesbian who went through SOCE counseling, and my life is proof that SOCE counseling can and does work for individuals struggling with unwanted same-sex attractions, behaviors, or identity. In my opinion, based on my training, experience, and personal life story, SOCE counseling is an effective method to assist people who struggle with unwanted same-sex attractions, behaviors, or

identities and who desire to conform their attractions, behaviors, and identities to their sincerely held religious beliefs.

6. I was sexually abused as a child and experienced tremendous trauma from that abuse and from the dysfunctional family in which I was raised. In my opinion and experience, this trauma and sexual abuse were the primary causes of my later developing sexual attractions towards other women. At the tender age of 16, I was already involved in a same-sex relationship. I did not really consider myself a homosexual and did not define myself as a lesbian, even though that is what many others told me I was. At age 19, I started therapy for some mental health issues that resulted from my traumatic and dysfunctional childhood, and my therapist was adamant that I was a lesbian, that I was born a lesbian, that I would always be a lesbian, and that I should just accept and embrace it because there was nothing that I could do about it.

7. From ages 19-24, I continued to engage in same-sex relationships as though I was a lesbian. I continued with these attractions because no one ever told me that change was possible. When I was 24, the woman who was my girlfriend at the time told me that she had heard of this thing called SOCE counseling and that she wanted to start trying it. This was the first time in my life that I had ever heard anyone even mention that change was possible and that a person did not have to continue a homosexual lifestyle if they did not want to do so. My therapist and many others constantly told me that I was always going to be a lesbian, but after hearing from my former lover, of all people, I knew that change was possible and wanted to see if I could succeed in changing.

8. The ministry I attended is called Harvest USA, which is a Christian organization that seeks to use the truth of Scripture to help individuals who struggle with unwanted same-sex attractions, behaviors, or identity, and also individuals struggling with other sexual issues such as pornography addictions or sexual addictions. It was at this ministry that I began to understand that I could change and that my Christian values could be the priority goal in my life. I began to read Steps Out of Homosexuality by Frank Worthen, who was also a former homosexual who had successfully changed. I began speaking with my girlfriend about it and discussing my desire to leave the homosexual lifestyle, and that I knew change was

possible. That day, I broke up with my girlfriend and decided that I was going to change. For five summers, I went to programs of Exodus International, which was an organization helping homosexuals to change. I also frequently attended Worthy Creations, which is another group in Florida for former homosexuals, and I began to experience the change that God had brought to my life.

9. I have been changed and reformed from that lifestyle for 23 years now. Because I knew that change was possible for people struggling with unwanted same-sex attractions, behaviors, or identities, and the peace and emotional, mental and spiritual health that results from successful change, I wanted to use my skills in education and counseling to begin to help those individuals who were struggling just as I had struggled. I founded the King of Hearts Counseling Center to establish a place where I could assist people with many different mental health issues, but also to help individuals who struggle with unwanted same-sex attractions, behaviors, or identity.

10. In my professional practice, I counsel clients for a variety of presented issues. I have had homosexual clients seeking help for depression, anxiety, distress, and other issues, that never discussed sexual orientation, or a desire to change, but I counseled them on the issues they chose to discuss with me. Mental health counseling is inherently and properly client centered, and professional ethics mandate that mental health professionals counsel patients based solely on the client's objectives and goals. It is unethical to attempt to impose any kind of ideology or framework on a client in counseling, so I do not even raise SOCE discussions unless a client wants to engage in such counseling.

11. Because I had testified in front of the legislature concerning the passage of A3371, one of my existing homosexual clients approached me about why I had never informed her that I could provide SOCE counseling to her or that change was possible if she desired to reduce or eliminate her unwanted same-sex sexual attractions, behaviors, or identity. She was struggling with anxiety on other issues and had expressed that her counseling goals were to alleviate those issues, so I never brought up SOCE counseling during our sessions. I am happy to engage in SOCE counseling with anyone who desires to change, but I do not force such counseling on anyone. It must be what the client requests before I will begin to engage in such counseling.

12. SOCE counseling is talk therapy. It is no different than any other form of mental health counseling. The parade of horribles of aversion techniques, such as electroshock treatments, pornographic viewing, nausea-inducing drugs, etc. are unethical methods of treatment that have not been used by any ethical and licensed mental health professional in decades. Mental health professionals who engage in such techniques should have their licenses revoked. Nevertheless, just because those outdated and unethical treatments should be prohibited does not mean that client centered SOCE talk therapy should be banned. The SOCE counseling that I practice is simply the traditional psychodynamic process of looking at root causes, childhood issues, developmental factors, and other things that cause a person to present with all types of physical, mental, emotional, or psychological issues that in turn cause them distress. This type of SOCE counseling is insight-oriented, just like every other modern form of mental health counseling, and it should not be banned simply because some people disagree with the fact that change is possible. Indeed, the only difference between my type of mental health counseling and the type of counseling provided by mental health professionals like my former therapist (who insisted that I was and would always be a lesbian) is that I believe change is possible, and I am living proof that SOCE counseling can and does work for some who want to change.

13. Many of my clients who seek SOCE counseling tell me that their unwanted same-sex attractions, behavior, or identity can be traced to abuse, trauma, neglect, and unfulfilled gender identity needs. Many of my clients seeking SOCE counseling were sexually molested. I was a victim of sexual abuse, and in my opinion it was one of the root causes of my same-sex attractions. In my professional opinion, the notion that people are born homosexual is a lie unsupported by science or reality, and change is possible for those who desire to reduce or eliminate their unwanted same-sex attractions, behavior, or identity. I have good friends who are also living proof that change is possible for those who seek and desire it, and that SOCE counseling can be an effective method by which to achieve such a desired result.

14. Many of my clients, both adult and minor, are Christians and request Christian counseling as part of the SOCE counseling that I provide. A3371 will prohibit me from practicing my profession and my counseling with these clients according to the sincerely held religious beliefs that both my clients and I

have. Many of my clients who seek SOCE counseling have reported varying degrees of change from homosexuality to heterosexuality as a result of the counseling. I have had clients comment that after SOCE counseling, they understood exactly the underlying root causes of their unwanted same-sex attractions, behavior, or identity and why they were distressed or anxious because of it.

15.     A3371 would prohibit professional counselors from even discussing available treatment options that might help alleviate a client's unwanted same-sex attractions, behaviors, or identity because a client might subsequently view even a simple discussion of SOCE counseling as an effort to reduce or eliminate his or her unwanted same-sex attractions, behaviors, or identity and subject the counselor to ethical charges and violations. A3371 will force counselors to violate a fundamental principle of informed consent. Section A.2 of the American Counseling Association Code of Ethics ("ACA Code") states that all patients need "adequate information about the counseling process," and that the client has the freedom to choose the counseling relationship. A3371 will force me to violate this principle because it will prohibit me from even discussing the availability of SOCE counseling. Discussing my personal story, the availability of SOCE counseling, or the notion that I believe change is possible could be considered an effort to change a client's sexual orientation, which would subject me to professional ethics violations. A3371 will therefore silence me in my counseling sessions and prohibit me from sharing my personal story with my clients and helping those who seek the change that I was able to achieve.

16.     I do not force any type of therapy on any of my clients because it would be unethical for me to do so. I show my clients unconditional, positive regard and make it a priority to respect what they believe about themselves concerning their sexual identity. A3371, however, will force me to commit an ethical violation by imposing a certain ideology—i.e., the government's ideology against SOCE counseling—on all my patients who seek SOCE treatment because A3371 only permits counselors to affirm same-sex attractions. It arguably precludes counselors from even telling clients with unwanted same-sex attractions that there is help available. A3371's mandate that I impose the government's ideology regarding same-sex attractions is a direct violation of Section A.4.b of the ACA Code, which mandates that mental health counselors "avoid imposing values that are inconsistent with counseling goals." A3371 forces me to

Declaration of Tara King - 6

ignore the client's values when those values and sincerely held religious beliefs inform the client that change is possible and that SOCE counseling is an effective method to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

17. A3371 also forces me to violate Section A.11 of the ACA Code. Section A.11.a states that "[c]ounselors do not abandon or neglect clients in counseling." A3371 mandates that I abandon my clients who seek to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity because I will no longer be able to provide the counseling that my clients desire. Section A.11.d mandates that when mental health counselors refer a client to a different practitioner for some course of counseling, that the referring professional "ensure that appropriate clinical and administrative processes are completed and open communication is maintained with both clients and practitioners." A3371 forces me to violate this provision as well, because I will no longer have any option of referring a client to an appropriate licensed mental health professional.

18. A3371 improperly prevents clients from obtaining the help that they desire and that I know, from personal experience, can benefit them. Clients who want help for unwanted same-sex attractions, behaviors, or identity should be entitled to make that decision and should not be forced by the government to receive only one position concerning a matter of personal religious conviction. The only option for clients seeking help with their unwanted same-sex attractions, behaviors, or identity is to retain unlicensed counselors, which defeats the whole purpose of licensing mental health professionals in the first place.

I declare under penalty of perjury of the laws of the United States and New Jersey that the foregoing statements are true and accurate.

Executed this ___20th___ day of August, 2013.

*Tara King, Ed.D.*