UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| **TARA KING**, **ED.D**, individually and on behalf of her patients, **RONALD NEWMAN**, **PH.D.**, individually and on behalf of his patients, **NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH)**, **AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC)**,<br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, **ERIC T. KANEFSKY**, Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs, in his official capacity, **MILAGROS COLLAZO**, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, in her official capacity, **J. MICHAEL WALKER**, Executive Director of the New Jersey Board of Psychological Examiners, in his official capacity; **PAUL JORDAN**, President of the New Jersey State Board of Medical Examiners, in his official capacity,<br>　　　　　　　Defendants. | Case No. _____ |

## DECLARATION OF DR. RONALD NEWMAN

I, Dr. Ron Newman, hereby declare as follows:

Declaration of Ron Newman, Ph.D. - 1

1.      I am over the age of 18 and am one of the Plaintiffs in this action. The statements in this Declaration are true and correct and if called upon to testify to them I would and could do so competently.

2.      I am submitting this Declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

3.      I received a Doctor of Philosophy degree in Psychoeducational Processes from Temple University in 1990. I received a Master of Arts degree in Counseling Psychology from Trinity Evangelical Divinity School in 1980, a Bachelor's Degree in Psychology from West Virginia University in 1976, and an Associates of Arts degree in Practical Theology from Christ for the Nations Institute in 1978. I have over 33 years of experience as a mental health professional and have been a Licensed Psychologist (NJ Lic. # 03257) in the State of New Jersey, since 1995. I am a Board Certified Professional Christian Counselor through the American Association of Christian Counselors.  My Resume is attached to this declaration as Attachment A.

4.      I am the Founder of the Christian Counseling Consortium of South Jersey ("CCC"), which is an active group of approximately 50 licensed and unlicensed mental health professionals, counselors, and pastors committed to engaging in counseling from a Christian perspective founded on the truths inherent in Scripture and with approximately 200 people who have expressed an interest and are on our mailing list.  I founded the CCC in 1998 to provide a forum for mental health professionals and counselors to come together to focus on and discuss contemporary issues of concern and to provide mutual support to church counselors, Christian mental health professionals, and pastors. The CCC offers Christ-centered training for licensed mental health professionals and others involved in Christian counseling, mental health, and spiritual formation.

5.      The CCC's mission is to encourage and support one another in our service to Jesus Christ through the ministry and/or vocation of Christian counseling, as well as cooperate in serving the body of Christ and the community at large. This mission is derived from Galatians 6:9-10, which states "let us not grow weary in well doing; for in due season we shall reap, if we faint not. As we have therefore opportunity, let us do good unto all men, especially unto them who are of the household of faith." The CCC purpose is to carry this Scriptural command into the field of mental health counseling. This is accomplished purpose through prayer, fellowship, sharing resources, mutual case-consultations, jointly sponsoring educational and training events, and other creative responses to the needs of the community and the individuals who seek mental health counseling in accordance with their sincerely held religious beliefs. Those who participate in the CCC seek to help people in need of counseling consistent with their religious beliefs, which also includes individuals seeking assistance with unwanted same-sex attractions, behaviors, or identity—some of whom are minors.

6.      I am currently a member of the American Psychological Association ("APA"), the New Jersey Psychological Association (NJPA), the Christian Association for Psychological Studies (CAPS), the National Association for Research and Therapy of Homosexuality (NARTH), and the American Association of Christian Counselors (AACC).  I have made nineteen trips to various South American countries in the last twenty years to teach pastors and counselors about effective mental health counseling methods.  In the past year, I became the Program Director of the new International School of Christian Counseling in Lima, Peru, and have the primary responsibility for developing this program which is designed to train Christian counselors in Latin America.

7. My practice is located at two offices in Hammonton, New Jersey and Linwood, New Jersey. Many of my clients come to me because of my Christian identity and their trust that their Christian values and beliefs will be respected in treatment. My practice is comprised of approximately 35 - 40 clients per week. I counsel individuals and families concerning stress, panic and anxiety, depression, post-traumatic stress disorder, grief, couples/marital counseling, and many other mental health issues that cause people distress, including individuals with unwanted same-sex attractions. I have a Biblical worldview, and for those clients who seek counseling from a Christian perspective and desire to conform their counseling goals with their sincerely held religious beliefs, I focus on Biblical integration in the counseling relationships which I form with them.

8. Part of my practice involves what is often called sexual orientation change efforts ("SOCE") counseling, sometimes with minors. I currently have clients who are struggling with issues that would fall under the prohibitions outlined in A3371, and the law is mandating that I provide only one viewpoint in my counseling with those minor clients. For example, I currently have a minor client who has developed confusion about the client's sexual orientation after engaging in some experimental behavior with a member of the same sex and has raised the issue during our counseling sessions about whether this makes the client a homosexual, which is a situation where A3371 would mandate only one type of counseling. As is true with much of my practice, the individuals who seek SOCE counseling from me do so because they have a desire to conform their attractions, behavior, and identity to their sincerely held religious beliefs. Many of these individuals seek to reduce or eliminate their unwanted same-sex attractions because their religious beliefs inform them that change is possible. I also believe that change is possible and

have personally counseled individuals who have successfully reduced or eliminated their unwanted same-sex attractions, behaviors, or identity.

9.     My first step in the process of counseling for my patients, including those minor clients with unwanted same-sex attractions, behaviors, or identity is to discover what the patient and the parents are hoping to achieve with the counseling and to establish a client's goals. Mental health counseling should be client centered, and the client's goals and objectives must control the counseling relationship.

10.    When a minor patient does not want to engage in SOCE counseling, my counseling focus often shifts to helping the parents understand the child's thinking, providing psychoeducation about homosexuality among youth, and working within the parents' religious beliefs to help them love and support their child. Helping parents love their child while valuing their own typically conservative religious faith is key intervention I believe unique to therapists like me who would be subject to A3371.

11.    When both the minor client and the parents want SOCE counseling, then I explain to them the nature of such counseling. I also explain to the client that if at any point in the course of the client's therapy the client decides he no longer wants to continue counseling for same-sex attractions, behaviors, or identity, then he should inform me immediately because the client's counseling should always be based on the goals and objectives of the client. I explain that SOCE counseling has been effective for some people with unwanted same-sex attractions, behavior, or identity, but that the counseling can sometimes invoke stress or anxiety about past events or root causes. I have counseled a number of individuals for whom SOCE has been effective and successful, but I have also counseled individuals who determined that their same-sex attractions,

behaviors, or identities were no longer unwanted. Many of the individuals I counseled that decided to stop the SOCE counseling still benefited from the counseling sessions.

12. Complying with A3371 would cause me to violate Section 3.10 of the American Psychological Association's Ethics Code ("APA Code"), which requires that I provide a patient with all information necessary to make an informed decision concerning a particular course of available counseling. It would also cause me to infringe General Ethical Principle E of the APA Code requiring that I ensure the patient the freedom to make a self-determined choice concerning his therapy. A3371 will cause me to violate those provisions because its prohibits me from providing detailed information to my clients about the available forms of counseling, including SOCE, so that the client's decision to choose a particular form of counseling is properly informed. A3371 would also prohibit me from making referrals to other licensed counselors who can provide SOCE. However, failure to comply with A3371 will subject me to possible disciplinary action.

13. Because A3371 forces me to violate one of my current ethical obligations or violate A3371, which would also be an ethical violation, the law is certain to cause irreparable harm to my practice by putting my professional license in jeopardy without providing any clear understanding of how to comply with all of the requirements of the counseling profession while still providing the type of counseling that is consistent with my minor patients' sincerely held religious beliefs.

14. A3371 will also cause me to violate Section 3.06 of the APA Code by causing me to enter into a relationship where my objectivity is called into question, especially since A3371 mandates that only one ideology—i.e., the government's ideology concerning SOCE—be shared

in the counselor's office regardless of the patient's sincerely held religious beliefs, desires, or counseling goals.

15.     A3371 improperly interferes with client autonomy. For those minors who desire SOCE counseling for their unwanted same-sex attractions, behaviors, or identity, implementation of A3371 will cause immediate and irreparable harm by precluding them from accessing helpful counseling from a licensed professional that the client desires and feels is the only assistance available to help them conform their sexual attractions, behaviors, and identity to their sincerely held religious beliefs.

I declare under penalty of perjury under the laws of the United States and the State of New Jersey that the foregoing statements are true and accurate.

Executed this __20th__ day of August, 2013.

_____
Ronald S. Newman, Ph.D.