UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| TARA KING, ED.D., individually and on behalf of her patients, RONALD NEWMAN, PH.D., individually and on behalf of his patients, NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH), AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC),<br><br>      Plaintiffs,<br>v.<br><br>CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey, in his official capacity, ERIC T. KANEFSKY, Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs, in his official capacity, MILAGROS COLLAZO, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, in her official capacity, J. MICHAEL WALKER, Executive Director of the New Jersey Board of Psychological Examiners, in his official capacity; PAUL JORDAN, President of the New Jersey State Board of Medical Examiners, in his official capacity,<br><br>      Defendants. | Case No. _____ |

## DECLARATION OF DR. ERIC T. SCALISE

I, Dr. Eric T. Scalise, hereby declare as follows:

1.     I am over the age of 18 and am the Vice President for Professional Development for the American Association of Christian Counselors ("AACC"), one of the Plaintiffs in this action.

The statements in this Declaration are true and correct and if called upon to testify to them I would and could do so competently.

2. I am submitting this Declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

3. I am a Licensed Marriage & Family Therapist and Licensed Professional Counselor in the Commonwealth of Virginia and was a Licensed Marriage and Family Counselor in the State of California for 23 years. I have a Ph.D. in Organizational Leadership from Regent University, an Educational Specialist degree in Advanced Psychotherapy from The College of William and Mary, a Master's of Education in Marriage and Family Counseling from The College of William and Mary, and a Bachelor of Arts degree in Psychology from The College of William and Mary. My curriculum vitae is attached to this declaration as Attachment A.

4. I am a clinical member of the American Association for Marriage and Family Therapy (AAMFT), and past clinical member of the American Counseling Association (ACA) and the Virginia Counseling Association, as well as a charter clinical member of the AACC. I have authored over 20 articles, as well as over 100 video workshops and other presentations.

5. The AACC was founded in 1989 and now has nearly 50,000 members throughout the world, including in New Jersey.

6. The AACC's members represent the entire spectrum of care, from lay/pastoral counselors to licensed mental health professionals. AACC's clinical members include Licensed Professional Counselors, Licensed Mental Health Counselors, Licensed Marriage & Family Therapists, Licensed Clinical Social Workers, Licensed Clinical Psychologists, Licensed Substance Abuse Treatment Providers, Clinical Nurse Specialists, and Psychiatrists.

7. The Mission of the AACC is to equip this continuum of care with distinctively Christian and clinically sound psycho-educational resources and services that address the whole person and which help individuals move toward personal wholeness, interpersonal competence, mental stability, and spiritual maturity.

8. The AACC seeks to encourage and support Christian counseling worldwide; disseminate information, educational resources, and counseling aids; stimulate interaction and mutual growth between mental health practitioners; advocate for the balanced integration of counseling and psychological principles with theology; inspire and offer the highest levels of training and continuing education; and promote ethical practice, integrity, sound research, and excellence in the delivery of professional and pastoral services.

9. The AACC's members' opinions and experience inform them that the professional research literature and a number of peer-reviewed articles demonstrate positive support for the efficacy of faith, spirituality, and religious values as they pertain to treatment outcomes. For example, prominent researcher, Dr. Harold Koenig, Director of the Center for Spirituality, Theology and Health at Duke University (2001), completed a systematic review of nearly 1,600 published health-related studies and concluded that the integration of a spiritual paradigm not only demonstrates increased levels of self-esteem, social support, and life satisfaction, but simultaneously reduces levels of anxiety, depression, loneliness, and suicide (Koenig, King, & Carson, 2012, *Handbook of Religion and Health*, 2nd ed.).

10. The AACC's members' opinions and experience inform them that the research literature supports the notion that when a client receives care within the confines of his/her basic worldview and foundational value system—of which religious affiliation is a significant marker

for most—treatment outcomes are more positive (Fallot, 2001; Hage et al, 2003; Hodge, 2006; Koenig et al., 2001; Larson, 2003).

11. The AACC's members follow the time-honored and foundational ethical value of client self-determination. A3371 directly and significantly undermines what is considered as a cornerstone principle in mental health counseling. This principle can be found in the language of the ethical codes of notable professional member organizations such as the American Psychological Association (APA), the American Counseling Association (ACA), and the American Association of Marriage and Family Therapists (AAMFT), to name a few.

12. The AACC's members support the position that every client seeking mental health services has the inherent right to participate in counseling that is in alignment with his/her religious beliefs and faith-based values, and furthermore, to have this right vigorously protected.

13. One of the ACA's divisions, the Association for Spiritual, Ethical, and Religious Values in Counseling (ASERVIC), has developed written spiritual competencies to be incorporated into treatment protocols. In reviewing the proceedings at the 2007 ACA national conference in Detroit, Michigan, ASERVIC hosted a panel discussion of educators and clinicians. These individuals were intentionally identified as being nationally recognized for their expertise in teaching and research in the area of spirituality in counseling. The following are eight of the competencies that have particular relevance to the discussion of the effects of A3371:

> Competency #2 – The professional counselor recognizes that the client's beliefs (or absence of beliefs) about spirituality and/or religion are central to his or her worldview and can influence psychosocial functioning.
>
> Competency #5 – The professional counselor can identify the limits of his or her understanding of the client's spiritual and/or religious perspective and is acquainted with religious and spiritual resources, including leaders, who can be avenues for consultation and to whom the counselor can refer.

> Competency #6 – The professional counselor can identify limits of her/his understanding of a client's religious or spiritual expression, and demonstrate appropriate referral skills and generate possible referral sources.
>
> Competency #7 – The professional counselor responds to client communications about spirituality and/or religion with acceptance and sensitivity.
>
> Competency #8 – The professional counselor uses spiritual and/or religious concepts that are consistent with the client's spiritual and/or religious perspectives and that are acceptable to the client.
>
> Competency #9 – The professional counselor can recognize spiritual and/or religious themes in client communication and is able to address these with the client when they are therapeutically relevant.
>
> Competency #12 – The professional counselor sets goals with the client that are consistent with the client's spiritual and/or religious perspectives.
>
> Competency #13 – The professional counselor is able to a) modify therapeutic techniques to include a client's spiritual and/or religious perspectives, and b) utilize spiritual and/or religious practices as techniques when appropriate and acceptable to a client's viewpoint.

14.   The AACC's members' opinions and experience inform them—as evidenced in the language of the above listed Competencies, especially #8 and #12—that a client's spiritual and religious values are indeed valid and reasonable determinants for the focus and direction of counseling.

15.   Many AACC members do not routinely offer SOCE counseling or rarely do, because they do not consider themselves to be competent by virtue of education, training, and experience regarding these related issues. Nevertheless, they will still likely encounter clients, including minor clients, within their other areas of specialty who are facing unwanted same-sex sexual attraction, behavior, or identity. These members are not inherently versed in the research literature or SOCE as are other professionals who may regularly counsel in this area. Nevertheless, as counselors trained to work in accordance with a client's values, beliefs, and right to self-determination, they may consequently address "sexual orientation" as defined herein,

but will not necessarily understand the definition or terms or reach of A3371. When these members engage a client regarding either attraction, behavior, identity or any area of gender expression (including mannerisms or speech), they will likely violate the law and be disciplined under A3371.

16. A3371 places prospective clients in an untenable double bind when receiving sexual orientation change efforts ("SOCE") counseling, especially when their religious values may inform and direct their behavior, expressions, and identity in a manner contrary to same-sex attractions. Furthermore, A3371 may, in fact, represent actual harm to the client because it does not allow the licensed treating practitioner to address these competing value systems, leaving the client with no means to process the potential inner conflict.

17. While acknowledging the current controversy over the implementation of SOCE, the general lack of conclusive research in this area, and the legitimate need for adolescents to receive competent care when addressing issues pertaining to sexual orientation, AACC's members' know that A3371 moves far beyond its original intent to protect minor clients and represents a reckless infringement on the religious liberties of anyone needing counseling in this area.

18. When a client's faith values may be in conflict with other cultural values, especially as they may pertain to the language found in A3371, that ultimately the client—and in the case of a minor, his/her parent or legal guardian—has the moral and ethical right to participate in and determine the appropriate course of care, including alignment with his/her relevant religious beliefs.

19. A3371 unfairly and unnecessarily discriminates against the religious liberties of the client and represents an intrusive and potentially damaging dynamic regarding the delivery of care.

20. Many AACC members do not practice SOCE counseling exclusively, or in some cases, at all. Nevertheless, these counselors will be subject to the same prohibitions that experts in sexual orientation counseling face. The APA Task Force Report revealed that not even the experts in this area universally agree on a definition of sexual orientation. The Task Force Report concluded that "[s]ame-sex sexual attractions occur in the context of a variety of sexual orientations and sexual orientation identities, and for some, sexual orientation identity (i.e., individual or group membership and affiliation, self-labeling) is fluid or has an indefinite outcome." This places a tremendous burden on AACC members, who though lacking expertise in this field, are still at risk of loss of their professional license when a minor client raises the issue of unwanted same-sex attractions, behavior or identity in a counseling session that was not originally understood to be prohibited counseling. These AACC members will be left to speculate as to exactly what counsel is prohibited by A3371, as well as the definition of sexual orientation and how to apply A3371 to any number of questions that arise when minor clients clearly choose for their attractions, behaviors, or identity to conform to their religious or moral values despite any unwanted sexual attractions, behaviors, or identity.

21. A3371 is not just about discussions of sexual orientation, but also those pertaining to a person's behavior that may be incongruent with his or her religious or moral values. Mental health professionals need the freedom to explore a client's behavior in a manner that incorporates discussions of the client's religious faith or values. AACC members will be forced to speculate as to whether the very discussion of client behavior, even though it may be incongruent with one's beliefs and values, would be considered an effort to reduce or eliminate unwanted same-sex attractions, behaviors, or identity. The same is true when minor clients plead with a counselor to help them not to identify with a particular sexual orientation. If AACC members are

prohibited from such discussions, then counselors and their minor clients will face irreparable harm. A3371 restricts a mental health provider from freely engaging with a minor client on this subject, regardless of any emotional or psychological duress the client may be experiencing due to the conflict of values, and therefore creates an unacceptable therapeutic double-bind for the client.

I declare under penalty of perjury of the laws of the United States and New Jersey that the foregoing statements are true and accurate.

Executed this 20th day of August, 2013.

Eric T. Scalise, Ph.D.