UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON DIVISION

| | |
|---|---|
| **TARA KING**, **ED.D.**, individually and on behalf of her patients, **RONALD NEWMAN**, **PH.D.**, individually and on behalf of his patients, **NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH)**, **AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC)**,<br><br>            Plaintiffs,<br>v.<br><br>**CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, **ERIC T. KANEFSKY**, Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs, in his official capacity, **MILAGROS COLLAZO**, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, in her official capacity, **J. MICHAEL WALKER**, Executive Director of the New Jersey Board of Psychological Examiners, in his official capacity; **PAUL JORDAN**, President of the New Jersey State Board of Medical Examiners, in his official capacity,<br><br>            Defendants. | Case No. 13-cv-5308 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CONVERTED MOTION FOR SUMMARY JUDGMENT**

## ARGUMENT

I. **PLAINTIFF COUNSELORS HAVE STANDING TO BRING CONSTITUTIONAL CHALLENGES ON BEHALF OF THEIR CLIENTS.**

The Supreme Court and the Third Circuit have recognized the rights of doctors and mental health professionals to bring constitutional challenges on behalf of their patients and clients. *Singleton v. Wulff*, 428 U.S. 106 (1976); *Doe v. Bolton*, 410 U.S. 179 (1973); *Penn. Psychiatric Soc'y v. Green Springs Health Servs., Inc.*, 280 F.3d 278 (3d Cir. 2002). Plaintiffs' assertion of their clients' constitutional rights is consistent with Article III standing requirements because their clients' "enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue." *Singleton*, 428 U.S. at 114-15. As such, "the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Id.* at 115.

"[T]hird-party standing requires satisfaction of three preconditions: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Penn. Psychiatric Soc'y*, 280 F.3d at 288-89. Courts are to balance these factors to determine whether a particular claim can be asserted by current litigants. *Id.* at 289. Plaintiffs and their clients easily satisfy these requirements.

### A. Plaintiffs Have Suffered and Are Currently Suffering Irreparable Injury.

As Plaintiffs' original Memo (Dkt. 4) demonstrates, Plaintiffs are currently suffering irreparable injury. Indeed, Plaintiffs are currently being subjected to an unconstitutional viewpoint-based and content-based restriction on their free speech (Memo at 3-16), as well as their free exercise of religion (see below). Plaintiffs are prohibited from continuing to engage in SOCE counseling with minor clients who wish to receive it, and from engaging in certain

1

discussions with any clients who will seek such counseling until this Court enjoins A3371. (Memo at 5-6). Plaintiffs are also currently subject to the vague and overbroad prohibitions of A3371, which place their professional licenses in tremendous danger despite not knowing exactly what A3371 prohibits. (Memo at 18-23). Plaintiffs are therefore suffering injury sufficient to satisfy Article III and thus satisfy the first requirement.

### B. Plaintiffs and Their Clients are in the Requisite Close Relationship.

"A close relationship for third party standing must allow the third-party plaintiff to operate, 'fully or nearly, as effective a proponent,' of the potential plaintiffs' rights as would the plaintiff himself." *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003) (citing *Singleton*, 428 U.S. at 114-15). "Such a situation arises . . . **in professional contexts**, where the right of the potential plaintiff and third-party plaintiff neatly align." *Id.* (emphasis added). The constitutionally protected right to make decisions concerning one's mental health and health care is "one in which the physician is intimately involved." *Singleton*, 428 U.S. at 117. Indeed, "[a]side from the [patient], **the physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, that decision**." *Id.* (emphasis added).

Here, Plaintiffs and their clients establish a therapeutic alliance in their counseling and the relationship between them is sufficiently close. Indeed, Plaintiffs' clients have specifically sought them out because they offer counseling consistent with their religious beliefs. (Dkt. 3-1, King Decl. ¶ 14; Dkt. 3-2, Newman Decl. ¶ 7). This relationship is inherently close and sufficient for Article III standing. *Penn. Psychiatric Soc'y*, 280 F.3d at 289 ("Psychiatrists clearly have the kind of relationship with their patients which lends itself to advancing claims on their behalf. This intimate relationship and the resulting mental health treatment ensures psychiatrists can effectively assert their patients' rights."). Therefore, Plaintiffs have—by the very nature of their

2

counseling relationship with their patients—satisfied the second requirement. *Id.* at 290 ("the psychiatrist-patient relationship would satisfy the second criterion for third-party standing").

### C. Plaintiffs' Clients Face an Obstacle to Litigating their Claims.

Plaintiffs' clients face substantial obstacles to bringing these claims. Indeed, "[f]or one thing, [they] may be chilled from such assertion by a desire to protect the very privacy of [their] decision from the publicity of a court suit." *Singleton*, 428 U.S. at 117. "[T]he psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." *Jaffree v. Redmond*, 518 U.S. 1, 10 (1996). "[D]isclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.*

"The stigma associated with receiving mental health services presents a considerable deterrent to litigation." *Penn. Psychiatric Soc'y*, 280 F.3d at 290 (citing *Parham v. J.R.*, 442 U.S. 584 (1979) (Stewart, J., concurring)). This consideration is only increased when such counseling involves intimate details concerning a minor's development, growth, and identity. Indeed, even the fear of stigmatization associated with bringing claims in a public forum "**operates as a powerful deterrent to bringing suit**." *Id.* (emphasis added). Therefore, Plaintiffs have standing to assert their patients' constitutional claims.

### II. A3371 UNCONSTITUTIONALLY INFRINGES ON PLAINTIFFS' AND THEIR CLIENTS' RIGHT TO THE FREE EXERCISE OF RELIGION.

A3371 unconstitutionally infringes on the First Amendment rights of Plaintiffs, Plaintiffs' patients, and their parents.[1] Plaintiffs are prohibited from providing and Plaintiffs'

---

[1] Whatever credence this Court gives to the Ninth Circuit's decision on California's SOCE prohibition, which should be little, it should be noted that the court there did not address the free exercise implications of a total ban on SOCE counseling. *See Pickup v. Brown*, No. 12-17681, 2013 WL 4564249 (9th Cir. Aug. 29, 2013). In fact, the court specifically stated that it was declining to consider that claim. *Id.* at *3 n.3.

3

patients are prohibited from receiving counseling that is consistent with their sincerely held religious beliefs that change is possible. The patients' parents are prohibited from assisting their children with receiving counseling consistent with their sincerely held religious beliefs and from directing the upbringing of their children in accordance with those beliefs. A3371 imposes a substantial burden on the religious beliefs of Plaintiffs and their clients. A3371 forces Plaintiffs to immediately cease counseling for those clients who seek SOCE because of their sincerely held religious beliefs. (King Decl. ¶ 14; Newman Decl. ¶ 15). This forces Plaintiffs' patients to elevate what the State has determined is an appropriate ideology over their own sincerely held religious beliefs about something as fundamental as their personal identity. This is the very essence of a substantial burden on religion. *Sherbet v. Verner*, 374 U.S. 398, 404 (1963); *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007) ("the Supreme Court has stated in its Free Exercise Clause jurisprudence that a substantial burden exists when a follower is forced 'to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand'") (quoting *Sherbert*, U.S. at 404). A3371 is also imposing a substantial burden on Plaintiffs practices because of its improper intrusion into client autonomy and its vagueness, all of which subject Plaintiffs to forfeiture of their licenses. (King Decl. ¶ 14; Newman Decl. ¶¶ 13, 15).

"The principle that government may not enact laws that suppress religious belief or practice is so well understood that few violations are recorded in our opinions." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993).[2] "Although a law

---

[2] New Jersey's Supreme Court follows federal precedent concerning the free exercise provision of the New Jersey Constitution and interprets it under the same framework. *See State v. Cameron*, 498 A.2d 1217, 1227-28 (N.J. 1985); *Ran-Dav's Cnty. Kosher, Inc. v. State*, 608 A.2d 1353, 1358 (1992). As such, Plaintiffs' free exercise arguments founded on federal precedent apply equally to Plaintiffs' free exercise claims under the New Jersey Constitution.

4

targeting religious beliefs as such is never permissible . . . if the object of the law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Id.* at 533 (citations omitted). Facial neutrality is not always sufficient. In some instances, "[f]acial neutrality is not determinative. The Free Exercise Clause . . . extends beyond facial discrimination. The Clause 'forbids subtle departures from neutrality,' . . . and 'covert suppression of particular religious beliefs.'" *Id.* at 534 (quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971) and *Bowen v. Roy*, 476 U.S. 693 (1986)). Moreover, "[t]he Free Exercise Clause protects against government hostility which is masked, as well as overt." *Id.*

Although neutral laws of general applicability receive deferential treatment, *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990), "[a] law failing to satisfy these requirements must be justified by a compelling government interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531-32. A3371 is not neutral or generally applicable and "must undergo the most rigorous of scrutiny." *Id.* at 546. Such a law "will survive strict scrutiny **only in rare cases**." *Id.* (emphasis added). A3371 fails strict scrutiny.

      A.      **A3371 is Not Neutral or Generally Applicable and is Therefore Subject to Strict Scrutiny.**

A3371 is directed only at counseling that offers to "reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender." (Compl. Ex. A). The desire for this kind of counseling is most often founded upon sincerely held religious beliefs such as those of Plaintiffs, Plaintiffs' patients, and their parents. As such, the law disproportionately affects those motivated by religious belief. In the case of Plaintiffs and their clients, both the offering and the receiving of SOCE is religiously motivated.

A3371 **exempts** counseling (1) for minors seeking to transition from one gender to another, (2) for minors struggling with or confused about heterosexual attractions, behaviors, or

5

identity, (3) that facilitates exploration and development of same-sex attractions, behaviors, or identity, (4) for individuals over the age of 18 who are seeking to reduce or eliminate same-sex attractions, behaviors, or identity, and (5) provided by unlicensed counselors. These individualized exemptions subject A3371 to heightened scrutiny. A system of individualized or categorical exemptions from the general prohibitions of the statute demonstrate that A3371 is not neutral or generally applicable. *See Lukumi*, 508 U.S. at 536-38. Laws that target substantially similar conduct but unevenly proscribe the conduct purporting to cause the harm constitute an impermissible "religious gerrymander." *Id.* A3371 unconstitutionally imposes such a gerrymander on the religious exercise of Plaintiffs, Plaintiffs' patients, and their parents.

"The unequal treatment of equally detrimental behaviors [causes] the violation of the Free Exercise Clause." *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 265 (3d Cir. 2007). "[T]he Free Exercise jurisprudence of the Supreme Court and of this Court teaches that the relevant comparison for purposes of a Free Exercise challenge to a regulation is between its treatment of certain religious conduct and the analogous secular conduct that *has a similar impact on the regulation's aims*." *Id.* at 265 (emphasis original).

> A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated **and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated**.

*Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) (Alito, J.) (emphasis added). In *Blackhawk*, the Third Circuit found heightened scrutiny proper because the statutes at issue created individualized and categorical exemptions that undermined the State's asserted interest in prohibiting certain conduct. *Blackhawk*, 381 F.3d at 211-12; *see also Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.) (noting that

6

when the government makes value judgments that exempt certain individuals for secular reasons but not for religious reasons, the regulation is subject to strict scrutiny).

A3371 permits SOCE counseling for individuals who seek to change sexual orientation towards homosexuality or bisexuality. (Compl. Ex. A). Not one legislative finding in A3371 opposes counsel seeking to change **heterosexual** sexual orientations. (*Id.*). In fact, A3371 specifically targets SOCE that seeks to "eliminate or reduce sexual or romantic attractions or feelings **towards a person of the same gender**." (*Id.*). (emphasis added). A3371 exempts counsel that **affirms** homosexual attractions while banning counsel that seeks to **change** homosexual attractions. A3371 also exempts counseling that "facilitates exploration or development" of same-sex attractions, behaviors, or identity. The law **exempts** counsel that seeks to change away from **hetero**sexuality towards **homo**sexuality but **bans** counsel that seeks to change away from **homo**sexuality towards **hetero**sexuality.

A3371 also permits counselors to engage in counseling with individuals seeking to transition from one gender to another. (*Id.*). This is certainly a significant change in sexual orientation or identity, especially for a minor, yet A3371 exempts it and indeed encourages it. (*Id.*). The law has made a value judgment that change in one direction (towards homosexuality) is fine but change in another direction (towards heterosexuality) is harmful. If "change" of sexual orientation or gender identity is "harmful," then the premise should hold true no matter which direction the change is directed. The fact that change in one direction is permitted but change in the other direction is banned reveals that the alleged harm the law seeks to prevent is undercut by the exemption. A3371 completely prohibits SOCE counseling for those individuals who seek to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, even when the counseling is consistent with the sincerely held religious beliefs of the client and counselor. (*Id.*).

A3371 continues to permit SOCE counseling by unlicensed counselors, which undermines its purported interest in preventing SOCE's alleged harm. If SOCE is harmful if offered by a licensed therapist, then it is harmful if offered by someone with little or no training in the area. And, if it is harmful for a 17-year old, it is harmful for an 18-year old. The State cannot ban what it erroneously deems is harmful in one setting while allowing the exact same alleged harm to go unregulated in another setting. The State is actually creating harm where none exists by forcing minors to get counsel from people who lack expertise. A3371 is not neutral or generally applicable and must satisfy the most exacting constitutional scrutiny.

Relevant evidence of neutrality includes, *inter alia*, "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history." *Id.* at 543. All of these considerations point to the APA Report, which the State used as its chief source of evidence for enacting A3371. One of the leaders of the Task Force stated, "[w]e cannot take into account what are fundamentally **negative religious perceptions in homosexuality—they don't fit into our world view**." (Dkt. 3-4, Rosik Decl. ¶ 3). "It appears that the APA operated with a litmus test when considering task force membership—the only views of homosexuality that were targeted are those **that uniformly endorsed same-sex behavior as a moral good**." (*Id.*). Thus, there is a strong inference that the A3371 is targeted specifically at those individuals who believe change in possible and whose sincerely held religious views inform them that change is possible.

**B.    A3371 Is Subject to Strict Scrutiny as a Violation of Plaintiffs, their Patients, and their Patients' Parents Hybrid Rights.**

Even laws that are neutral and generally applicable are subject to strict scrutiny when they implicate more than one constitutional right. "Strict scrutiny may also apply when a neutral, generally applicable law incidentally burdens rights protected by 'the Free Exercise Clause in

conjunction with other constitutional protections, such as freedom of speech and of the press, or the rights of parents to direct the education of their children.'" *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 n.26 (3d Cir. 2002) (quoting *Emp't Div.*, 494 U.S. at 881). Here, there are multiple bases upon which to find hybrid-rights violations. Plaintiffs' free speech rights are being infringed by A3371's viewpoint-based and content-based restriction on their counseling. (Memo at 4-18). A3371 is also violating the First Amendment rights of Plaintiffs' patients by restricting the availability of counseling options that are consistent with their sincerely held religious beliefs. (*Id.* at 23-26). Additionally, A3371 infringes on the fundamental rights of the parents of Plaintiffs' patients to direct the upbringing and education of their child. (Compl. ¶¶ 259-67). When combined with the free exercise claims of Plaintiffs, Plaintiffs' patients, and their parents, all of these constitutional violations are sufficient to implicate strict scrutiny under the hybrid rights claim. *See Emp't Div.*, 494 U.S. at 881.

      **C.**     **A3371 Cannot Withstand Strict Scrutiny.**

A3371 is not neutral or generally applicable and infringes on the free exercise and hybrid rights of Plaintiffs, Plaintiffs' patients and parents, so it must by justified by a compelling government interest and narrowly tailored. *Lukumi*, 508 U.S. at 531-32. A3371 fails that test.

      **1.**     **A3371 is not justified by a compelling government interest.**

As Plaintiffs' initial Memo demonstrates, A3371 is not justified by a compelling government interest. (Dkt. 4, Memo at 11-16). Here, the government "must demonstrate that **the recited harms are real, not merely conjectural**, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (emphasis added). Yet, "sexual orientation issues in **children are virtually unexamined**." APA Report at 91. Moreover, the evidence of harm is based on **mere anecdotes**

9

from individuals who self report. For this reason, the APA Report noted that its conclusions were quite limited due to the fact that "there is a dearth of scientifically sound research on the safety of SOCE." *Id.* at 41. Such unsupported and anecdotal reports of harm are insufficient to establish a compelling government interest justifying infringement on Plaintiffs' rights to the free exercise of religion. The exemptions noted above also undermine any alleged governmental interest. Plaintiffs hereby incorporate the compelling interest section in their original memo at pp. 11-16.

### 2. A3371 is not narrowly tailored.

A narrowly tailored regulation is one that achieves the government's interest "**without unnecessarily interfering with First Amendment freedoms**." *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S 115, 126 (1989) (emphasis added). A complete prohibition on SOCE by licensed professionals under any circumstances for any minor is not the least restrictive means. A complete ban can hardly meet the least restrictive means test, especially when the main source relied upon by the State (the APA Report) acknowledges there is evidence that SOCE is beneficial to some who seek such counsel and the only evidence of alleged harm is at best anecdotal, and it must be underscored—there is no research on minors. Certainly, if there is evidence of benefit from such counseling, then especially for minors who seek such counseling to align their sexual identity to their sincerely held religious beliefs, a complete prohibition on such counseling is unwarranted. Informed consent, not a total ban, is a less restrictive means to protect the interest of the state and the Plaintiffs. Informed consent is the cornerstone of counseling. If the client is fully informed and seeks change counsel to align his or her stress with religious values, then the client should have that right. A total ban collides with the Plaintiffs' free exercise of religion. Plaintiffs hereby incorporate the narrow tailoring section in their original Memo at 16-18.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its Converted Motion for Summary Judgment.

Respectfully submitted,

/s/ Daniel J. Schmid
Daniel J. Schmid*
Mathew D. Staver*
Stephen M. Crampton*
Demetrios Stratis
New Jersey Bar No. 022391991
Liberty Counsel
Attorneys for Plaintiffs
P.O. Box 11108
Lynchburg, VA 24502
Tel. 434-592-7000
Fax: 434-592-7700
court@LC.org

*Admitted Pro Hac Vice

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the court on September 3, 2013. Service will be effectuated by the Court's electronic notification system upon all counsel of record.

/s/ Daniel J. Schmid
Daniel J. Schmid*
Mathew D. Staver*
Stephen M. Crampton*
Demetrios Stratis
New Jersey Bar No. 022391991
Liberty Counsel
Attorneys for Plaintiffs
P.O. Box 11108
Lynchburg, VA 24502
Tel. 434-592-7000
Fax: 434-592-7700
court@LC.org

*Admitted Pro Hac Vice

*Attorneys for Plaintiffs*