UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TARA KING, ED.D., *et al.*, | Civil Action |
| Plaintiffs, | Case No. 13-cv-5038 |
| v. | Hon. Freda L. Wolfson, U.S.D.J. |
| CHRISTOPHER J. CHRISTIE, *et al.*, | |
| Defendants. | Hon. Lois H. Goodman, U.S.M.J. |

**PROPOSED INTERVENOR-DEFENDANT GARDEN STATE EQUALITY'S
STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Michael Gluck
Andrew Bayer
GluckWalrath LLP
428 River View Plaza
Trenton, NJ 08611
Telephone:  (609) 278-3900
Facsimile:   (609) 278-3901

Frank Holozubiec
David S. Flugman
Brett J. Broadwater
Shireen A. Barday
Andrew C. Orr
   *Pro hac vice applications
          pending*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

-- and --

Andrew Welz
   *Pro hac vice application
          pending*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:   (202) 879-5200

Shannon P. Minter
Amy Whelan
Christopher F. Stoll
   *Pro hac vice applications
          pending*
NATIONAL CENTER FOR
LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone:  (415) 392-6257
Facsimile:   (415) 392-8442

*Attorneys for Proposed Intervenor-Defendant Garden State Equality*

Pursuant to Civ. Rule 56.1(a) of the Local Rules of the United States District Court for the District of New Jersey, Proposed Intervenor-Defendant Garden State Equality respectfully submits this Statement of Undisputed Facts in Support of its Cross-Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS

1. Assembly Bill 3371 passed by a vote of 28 to 9 in the New Jersey Senate on June 27, 2013 (N.J. Legis. Digest, Off. of Pub. Info., 215th Legislature, 2d Session, at 3 (June 27, 2013)[1]) and a vote of 56 to 14 in the New Jersey Assembly on June 24, 2013 (N.J. Legis. Digest, Off. of Pub. Info., 215th Legislature, 2d Session, at 6 (June 24, 2013)[2]).

2. New Jersey Governor Christopher Christie signed A3371 into law on August 19, 2013. (2102 N.J. A.B. 3771, Signing Statement of Christopher J. Christie, August 19, 2013.[3])

3. A3371 states as follows:

> AN ACT concerning the protection of minors from attempts to change sexual orientation and supplementing Title 45 of the Revised Statutes.
>
> BE IT ENACTED by the Senate and General Assembly of the State of New Jersey:
>
> 1. The Legislature finds and declares that:
>
> a. Being lesbian, gay, or bisexual is not a disease, disorder, illness, deficiency, or shortcoming. The major professional associations of mental health

---

[1] *Available at* http://www.njleg.state.nj.us/legislativepub/digest/062713.pdf.

[2] *Available at* http://www.njleg.state.nj.us/legislativepub/digest/062413.pdf.

[3] *Available at* http://www.state.nj.us/governor/news/news/552013/pdf/20130819a_A3371.pdf.

practitioners and researchers in the United States have recognized this fact for nearly 40 years;

    b.   The American Psychological Association convened a Task Force on Appropriate Therapeutic Responses to Sexual Orientation. The task force conducted a systematic review of peer-reviewed journal literature on sexual orientation change efforts, and issued a report in 2009. The task force concluded that sexual orientation change efforts can pose critical health risks to lesbian, gay, and bisexual people, including confusion, depression, guilt, helplessness, hopelessness, shame, social withdrawal, suicidality, substance abuse, stress, disappointment, self-blame, decreased self-esteem and authenticity to others, increased self-hatred, hostility and blame toward parents, feelings of anger and betrayal, loss of friends and potential romantic partners, problems in sexual and emotional intimacy, sexual dysfunction, high-risk sexual behaviors, a feeling of being dehumanized and untrue to self, a loss of faith, and a sense of having wasted time and resources;

    c.   The American Psychological Association issued a resolution on Appropriate Affirmative Responses to Sexual Orientation Distress and Change Efforts in 2009, which states: "[T]he [American Psychological Association] advises parents, guardians, young people, and their families to avoid sexual orientation change efforts that portray homosexuality as a mental illness or developmental disorder and to seek psychotherapy, social support, and educational services that provide accurate information on sexual orientation and sexuality, increase family and school support, and reduce rejection of sexual minority youth";

    d.   (1) The American Psychiatric Association published a position statement in March of 2000 in which it stated: "Psychotherapeutic modalities to convert or 'repair' homosexuality are based on developmental theories whose scientific validity is questionable. Furthermore, anecdotal reports of 'cures' are counterbalanced by anecdotal claims of psychological harm. In the last four decades, 'reparative' therapists have not produced any rigorous scientific research to substantiate their claims of cure. Until there is such research available, [the American Psychiatric Association] recommends that ethical practitioners refrain from attempts to change individuals' sexual orientation, keeping in mind the medical dictum to first, do no harm;

    (2) The potential risks of reparative therapy are great, including depression, anxiety and self-destructive behavior, since therapist alignment with societal prejudices against homosexuality may reinforce self-hatred already experienced by the patient. Many patients who have undergone reparative therapy relate that

2

they were inaccurately told that homosexuals are lonely, unhappy individuals who never achieve acceptance or satisfaction. The possibility that the person might achieve happiness and satisfying interpersonal relationships as a gay man or lesbian is not presented, nor are alternative approaches to dealing with the effects of societal stigmatization discussed; and

(3) Therefore, the American Psychiatric Association opposes any psychiatric treatment such as reparative or conversion therapy which is based upon the assumption that homosexuality per se is a mental disorder or based upon the a priori assumption that a patient should change his or her sexual homosexual orientation";

e. The American School Counselor Association's position statement on professional school counselors and lesbian, gay, bisexual, transgender, and questioning (LGBTQ) youth states: "It is not the role of the professional school counselor to attempt to change a student's sexual orientation/gender identity but instead to provide support to LGBTQ students to promote student achievement and personal well-being. Recognizing that sexual orientation is not an illness and does not require treatment, professional school counselors may provide individual student planning or responsive services to LGBTQ students to promote self-acceptance, deal with social acceptance, understand issues related to coming out, including issues that families may face when a student goes through this process and identify appropriate community resources";

f. The American Academy of Pediatrics in 1993 published an article in its journal, Pediatrics, stating: "Therapy directed at specifically changing sexual orientation is contraindicated, since it can provoke guilt and anxiety while having little or no potential for achieving changes in orientation";

g. The American Medical Association Council on Scientific Affairs prepared a report in 1994 in which it stated: "Aversion therapy (a behavioral or medical intervention which pairs unwanted behavior, in this case, homosexual behavior, with unpleasant sensations or aversive consequences) is no longer recommended for gay men and lesbians. Through psychotherapy, gay men and lesbians can become comfortable with their sexual orientation and understand the societal response to it";

h. The National Association of Social Workers prepared a 1997 policy statement in which it stated: "Social stigmatization of lesbian, gay, and bisexual people is widespread and is a primary motivating factor in leading some people to seek sexual orientation changes. Sexual orientation conversion therapies assume that homosexual orientation is both pathological and freely chosen. No data

demonstrates that reparative or conversion therapies are effective, and, in fact, they may be harmful";

    i.    The American Counseling Association Governing Council issued a position statement in April of 1999, and in it the council states: "We oppose 'the promotion of "reparative therapy" as a "cure" for individuals who are homosexual'";

    j.    (1) The American Psychoanalytic Association issued a position statement in June 2012 on attempts to change sexual orientation, gender, identity, or gender expression, and in it the association states: "As with any societal prejudice, bias against individuals based on actual or perceived sexual orientation, gender identity or gender expression negatively affects mental health, contributing to an enduring sense of stigma and pervasive self-criticism through the internalization of such prejudice; and

    (2)    Psychoanalytic technique does not encompass purposeful attempts to 'convert,' 'repair,' change or shift an individual's sexual orientation, gender identity or gender expression. Such directed efforts are against fundamental principles of psychoanalytic treatment and often result in substantial psychological pain by reinforcing damaging internalized attitudes";

    k.    The American Academy of Child and Adolescent Psychiatry in 2012 published an article in its journal, Journal of the American Academy of Child and Adolescent Psychiatry, stating: "Clinicians should be aware that there is no evidence that sexual orientation can be altered through therapy, and that attempts to do so may be harmful. There is no empirical evidence adult homosexuality can be prevented if gender nonconforming children are influenced to be more gender conforming. Indeed, there is no medically valid basis for attempting to prevent homosexuality, which is not an illness. On the contrary, such efforts may encourage family rejection and undermine self-esteem, connectedness and caring, important protective factors against suicidal ideation and attempts. Given that there is no evidence that efforts to alter sexual orientation are effective, beneficial or necessary, and the possibility that they carry the risk of significant harm, such interventions are contraindicated";

    l.    The Pan American Health Organization, a regional office of the World Health Organization, issued a statement in May of 2012 and in it the organization states: "These supposed conversion therapies constitute a violation of the ethical principles of health care and violate human rights that are protected by international and regional agreements." The organization also noted that

reparative therapies "lack medical justification and represent a serious threat to the health and well-being of affected people";

    m.  Minors who experience family rejection based on their sexual orientation face especially serious health risks. In one study, lesbian, gay, and bisexual young adults who reported higher levels of family rejection during adolescence were 8.4 times more likely to report having attempted suicide, 5.9 times more likely to report high levels of depression, 3.4 times more likely to use illegal drugs, and 3.4 times more likely to report having engaged in unprotected sexual intercourse compared with peers from families that reported no or low levels of family rejection. This is documented by Caitlin Ryan et al. in their article entitled Family Rejection as a Predictor of Negative Health Outcomes in White and Latino Lesbian, Gay, and Bisexual Young Adults (2009) 123 Pediatrics 346; and

    n.  New Jersey has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting its minors against exposure to serious harms caused by sexual orientation change efforts.

    2.  a.  A person who is licensed to provide professional counseling under Title 45 of the Revised Statutes, including, but not limited to, a psychiatrist, licensed practicing psychologist, certified social worker, licensed clinical social worker, licensed social worker, licensed marriage and family therapist, certified psychoanalyst, or a person who performs counseling as part of the person's professional training for any of these professions, shall not engage in sexual orientation change efforts with a person under 18 years of age.

    b.  As used in this section, "sexual orientation change efforts" means the practice of seeking to change a person's sexual orientation, including, but not limited to, efforts to change behaviors, gender identity, or gender expressions, or to reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender; except that sexual orientation change efforts shall not include counseling for a person seeking to transition from one gender to another, or counseling that:

    (1)  provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and

    (2)  does not seek to change sexual orientation.

3. This act shall take effect immediately.

## STATEMENT

This bill prohibits counseling to change the sexual orientation of a minor.

Under the provisions of the bill, a person who is licensed to provide professional counseling, including, but not limited to, a psychiatrist, licensed practicing psychologist, certified social worker, licensed clinical social worker, licensed social worker, licensed marriage and family therapist, certified psychoanalyst, or a person who performs counseling as part of the person's professional training, is prohibited from engaging in sexual orientation change efforts with a person under 18 years of age.

The bill defines "sexual orientation change efforts" as the practice of seeking to change a person's sexual orientation, including, but not limited to, efforts to change behaviors or gender expressions, or to reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender. The term, however, does not include counseling for a person seeking to transition from one gender to another, or counseling that: provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and does not seek to change sexual orientation.

---

Protects minors by prohibiting attempts to change sexual orientation.

4. The New Jersey Legislature held hearings on A3371 during the course of which numerous witnesses submitted live oral and written testimony. Live hearings were conducted on March 18, 2013 before the New Jersey Senate Health, Human Services, and Senior Citizens Committee and on June 13, 2013 before the New Jersey Assembly Women and Children Committee. (N.J. Legis. Digest, Off. of Pub. Info., 215th Legislature, 2d Session, at 3

(March 18, 2013) (Senate Hearing on S2278)[4]; N.J. Legis. Digest, Off. of Pub. Info., 215th Legislature, 2d Session, at 3 (June 13, 2013).[5])

5. The New Jersey Legislature found that "The American Psychological Association convened a Task Force on Appropriate Therapeutic Responses to Sexual Orientation…. The task forced concluded that sexual orientation change efforts can pose critical health risks to lesbian, gay, and bisexual people, including confusion, depression, guilt, helplessness, hopelessness, shame, social withdrawal, suicidality, substance abuse, stress, disappointment, self-blame, decreased self-esteem and authenticity to others, increased self-hatred, hostility and blame toward parents, feelings of anger and betrayal, loss of friends and potential romantic partners, problems in sexual and emotional intimacy, sexual dysfunction, high-risk sexual behaviors, a feeling of being dehumanized and untrue to self, a loss of faith, and a sense of having wasted time and resources." (*See* 2012 N.J. Law A.B. 3371 §1(b).)

6. The New Jersey Legislature found that the "American Psychiatric Association published a position statement in March of 2000 in which it stated … The potential risks of reparative therapy are great, including depression, anxiety, and self-destructive behavior, since therapist

---

[4] *Available at* http://www.njleg.state.nj.us/legislativepub/digest/031813.pdf.   Senate Bill S2278 was substituted by A3371 on June 27, 2013. *See* N.J. Legislature, Legis. Rec. for S2278, available at http://www.njleg.state.nj.us/bills/BillView.asp?BillNumber=S2278. The New Jersey legislature only transcribe hearings at the request of a committee member, but an audio recording of the New Jersey Senate Health, Human Services, and Senior Citizens Committee is available at http://www.njleg.state.nj.us/media/archive_audio2.asp?KEY=SHH&SESSION=2012.

[5] *Available at* http://www.njleg.state.nj.us/legislativepub/digest/061313.pdf.   An audio recording of the New Jersey Assembly Women & Children Committee, June 12, 2013 Hearing on A3371 is available at http://www.njleg.state.nj.us/media/archive_audio2.asp?KEY=AWC&SESSION=2012

alignment with societal prejudice against homosexuality may reinforce self-hatred already experienced by the patient." (*Id.* § 1(d).)

7. The Legislature found that "The American Academy of Child and Adolescent Psychiatry in 2012 published an article … stating 'There is no evidence that sexual orientation can be altered through therapy, and that attempts to do so may be harmful…. Indeed, there is no medically valid basis for attempting to prevent homosexuality, which is not an illness…. Given that there is no evidence that efforts to alter sexual orientation are effective, beneficial, or necessary, and the possibility that they carry the risk of significant harm, such interventions are contraindicated" (*Id.* § 1(k).)

8. In addition to these professional organizations' conclusions, the New Jersey Legislature relied upon similar statements from the American School Counselor Association, American Academy of Pediatrics, American Medical Association, National Association of Social Workers, American Counseling Association, American Psychoanalytic Association, and the Pan American Health Organization (a regional office of the World Health Organization) in enacting A3371. (*Id.* §1(c), (e)-(j), (l).) The Legislature found that (1) "[t]herapy directed at specifically changing sexual orientation is contraindicated, since it can provoke guilty and anxiety while having little to no potential for achieving changes in orientation" (*id.* § 1(f)) ; (2) that "[t]he [American Psychological Association] advises parents, guardians, young people, and their families … to seek psychotherapy, social support, and education services that provide accurate information on sexual orientation and sexuality, increase family and school support, and reduce rejection of sexual minority youth" (*id.* § 1(f)); (3) that "[p]sychoanalytic technique does not encompass purposeful attempts to 'convert,' 'repair,' change or shift an individual's sexual orientation, gender identity or gender expression" (*id.*

8

§ 1(j)(2)); and (4) and that "reparative therapies 'lack medical justification and represent a serious threat to the health and well-being of affected people" (*id.* § 1(l).)

9. The New Jersey Legislature also found "[m]inors that experience family rejection based on their sexual orientation face especially serious risks." (*Id.* §1(m).) It cited research concluding that "lesbian, gay, and bisexual young adults who reported higher levels of family rejection during adolescence were 8.4 times more likely to report having attempted suicide, 5.9 times more likely to report high levels of depression, 3.4 times more likely to use illegal drugs, and 3.4 times more likely to report having engaged in unprotected sexual intercourse compared with peers from families that reported no or low levels of rejection." (*Id.* §1(m).)

10. The New Jersey Legislature determined that "New Jersey has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting its minors against exposure to serious harms caused by sexual orientation change efforts." (*Id.* § 1(n).)

11. Numerous witnesses appeared before the Assembly's Committee on Women and Children to support the passage of A3371, including witnesses supporting the bill on behalf of the New Jersey Psychological Association, the New Jersey Psychiatric Association, and the American Academy of Pediatrics, New Jersey Chapter. (*See* Exhibit 1 to Affirmation of Andrew Bayer ("Bayer Aff."), N.J. Assembly Women & Children Committee, Hearing on A3371, June 12, 2013 (witness slips), at 2, 7-8.[6])

---

[6] Witness slips were provided by Michele Leblanc, OLS Aide, N.J. Assembly Women & Children Committee.

9

12. The letter submitted on behalf of the National Association of Social Workers, New Jersey Chapter, stated that "[n]ot only is there no scientific data to support the success" of psychological attempts to change sexual orientation, but "these therapies can actually have extremely detrimental effects on patients." (Exhibit 2 to Bayer Aff., Letter from Walter Kalman, MSW, LSW, Exec. Dir., Nat'l Ass'n of Soc. Workers, N.J. Chapter to Members of the Assembly Women & Children Committee (June 13, 2013).)

13. Dr. Jean Mercer, a developmental psychologist and retired professor of psychology, stated in written and oral testimony that the "use of 'conversion therapies' . . . with children and adolescents poses particular ethical problems" because "[m]inors cannot effectively refuse or resist treatments wanted by their parents or other authorities." (Exhibit 3 to Bayer Aff., Testimony of Dr. Jean Mercer, PhD, Prof. Emerita of Psychology, Stockton College, before N.J. Assembly Women & Children Committee, Hearing on A3371, June 12, 2013.)

14. Other witnesses testifying before the Legislature included individuals who testified that as minors they had been subjected by licensed therapists to efforts to change their sexual orientation. Mordechai Levovitz, testified orally and in writing as follows: "When I was six years old my parents brought me to a therapist because they were concerned I was acting too feminine.... I was made to feel by doctors that there was something wrong with me.... I was made to feel shame and engage in a fruitless labor that left me sad and broken." (Exhibit 4 to Bayer Aff., Testimony of Modechai Levovitz, Co-Exec. Dir., JQY, before N.J. Assembly Women & Children Committee, Hearing on A3371, June 12, 2013.)

15. Ryan Kendall testified orally and in writing as follows: "As a young teen, the anti-gay practice of so-called conversion therapy destroyed my life and tore apart my family.... My

family and faith had rejected me, and the damaging messages of conversion therapy, coupled with this rejection, drove me to the brink of suicide. For the next decade I struggled with depression, periods of homelessness, and drug abuse." (Exhibit 5 to Bayer Aff., Testimony of Ryan Kendall before N.J. Assembly Women & Children Committee, Hearing on A3371, June 12, 2013.)

Dated: September 13, 2013

GluckWalrath LLP

By: /s Andrew Bayer
Michael Gluck
Andrew Bayer
428 River View Plaza
Trenton, NJ 08611
Telephone:  (609) 278-3900
Facsimile:  (609) 278-3901

KIRKLAND & ELLIS LLP

By: /s David S. Flugman
Frank Holozubiec
David S. Flugman
Brett J. Broadwater
Shireen A. Barday
Andrew C. Orr
 *Pro hac vice applications pending*
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

-- and --

Andrew Welz
 *Pro hac vice application pending*
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

11

NATIONAL CENTER FOR
LESBIAN RIGHTS

By: ___s/Shannon Minter____
Shannon L. Minter
Amy Whelan
Christopher F. Stoll
  *Pro hac vice applications pending*
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone:  (415) 392-6257
Facsimile:  (415) 392-8442

*Attorneys for Proposed Intervenor-Defendant Garden State Equality*