# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| **TARA KING**, **ED.D**, individually and on behalf of her patients, **RONALD NEWMAN**, **PH.D.**, individually and on behalf of his patients, **NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH)**, **AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC)**, <br><br> Plaintiffs, <br><br> v. <br><br> **CHRISTOPHER J. CHRISTIE**, Governor of the State of New Jersey, in his official capacity, **ERIC T. KANEFSKY**, Director of the New Jersey Department of Law and Public Safety: Division of Consumer Affairs, in his official capacity, **MILAGROS COLLAZO**, Executive Director of the New Jersey Board of Marriage and Family Therapy Examiners, in her official capacity, **J. MICHAEL WALKER**, Executive Director of the New Jersey Board of Psychological Examiners, in his official capacity; **PAUL JORDAN**, President of the New Jersey State Board of Medical Examiners, in his official capacity, <br> Defendants. | Case No. 13-cv-5038 |

## REBUTTAL DECLARATION OF DR. RONALD NEWMAN

I, Dr. Ron Newman, hereby declare as follows:

1.      I am over the age of 18 and am one of the Plaintiffs in this action. The statements in this Declaration are true and correct and if called upon to testify to them I would and could do so competently.

2.      I am submitting this Declaration in support of Plaintiffs' Converted Motion for Summary Judgment and in Response to the State of New Jersey's and Garden State Equality's Cross-Motion for Summary Judgment.

3.      I received a Doctor of Philosophy degree in Psychoeducational Processes from Temple University in 1990. I received a Master of Arts degree in Counseling Psychology from Trinity International University in 1980, a Bachelor's Degree in Psychology from West Virginia University in 1976, and an Associates of Arts degree in Practical Theology from Christ for the Nations Institute in 1978. I have 33 years of experience as a mental health professional and have been a Licensed Clinical Psychologist (LCP) in the State of New Jersey, since 1995. I am a Board Certified Professional Christian Counselor through the American Association of Christian Counselors. I am the Founder of the Christian Counseling Consortium of South Jersey ("CCC"), which is a group of approximately 50 licensed and unlicensed mental health professionals, counselors, and pastors committed to engaging in counseling from a Christian perspective founded on the truths inherent in Scripture and with approximately 200 people who have expressed interest and are on our mailing list.

4.      Despite the State's contention to the contrary, **the fact that homosexuality is not a disease is irrelevant, since there are countless issues that are not a disease and become a matter of therapeutic concern** (e.g., family conflicts, a wide range of stressors both externally and internally in people's lives, etc.).   In my practice of Sexual Orientation Change Efforts (SOCE) (which is only with those who have *unwanted* same sex attractions, *not* those who self-

identify as gay), there have always been other diagnoses that are a matter of clinical concern (e.g., PTSD, OCD, depression, anxiety, etc.) which bring the client in for therapy, and the SOCE is secondary.

5.      A3371 infringes on the ethical obligation to allow the client the right of self-determination, and hinders ethical psychologists (which most are) from giving treatment options that are not strictly "gay affirming."

6.      Our country and our mental health professions have been founded on acceptance of diversity of beliefs and philosophical positions. We claim to look to evidence to make our clinical decisions, but inaccuracies abound based on a variety of cognitive distortions, including emotional reasoning.  Scientific and anecdotal evidence of the fluidity of the sexuality of many people is ignored in A3371 and by its advocates in favor of a presupposition that people can be born gay and that the science is settled on that matter. It is not.

7.      While it purports to be protecting minors, the central issue of this law is not to protect minors from unethical and harmful professionals.  The real central issue is a direct attack on the worldview and belief systems of most major conservative religious organizations and what they consider to be their "Holy books" (The Torah, the Bible, the Koran, the Book of Mormon, etc.). This is evidenced by Defendants' experts who say counselors should focus on changing those religious beliefs that oppose homosexuality. Section 1(j) of A3371 states, "As with any societal prejudice, bias against individuals based on actual or perceived sexual orientation, gender identity or gender expression negatively affects mental health, contributing to an enduring sense of stigma and pervasive self-criticism through the internalization of such prejudice."  **The "societal prejudice" referenced has to do with conservative interpretations of various historical Sacred writings which present a worldview that is contrary to the belief that a**

Declaration of Ron Newman, Ph.D. - 3

person is **"born gay" and has no choice regarding their sexual behavior patterns**.  (The conservative religious position has scientific support, in spite of the political positions of various professional associations on this issue.)

8.     The religious organizations teach that people have the right of self-determination and the responsibility to control their behavior within the boundaries established by their teachings. Most religions have a "holy book", such as the Torah or Bible, which conservative believers look to for their belief system and how to live their lives.  The freedom to believe a diversity of things about God, morality, etc., is part of what defines us as a nation.  This freedom is now being severely challenged by this law.  A3371 attacks the right of parents to practice their religious faith and teach their children the boundaries they understand to be healthy for them.

9.     A3371 also denies the rights of individuals to choose therapy with someone who understands the tenants of their faith and can counsel in a manner that is culturally sensitive to their faith subculture.  It also hinders my ability to practice my faith and work with clients who desire assistance in applying the most effective therapeutic tools to help them align their behavior with their deeply held religious belief systems.

10.     The purported harmful effects of SOCE are based on inadequate science with no serious objective scientific support, **far less than the evidence supporting the effectiveness and benefit of SOCE**, proving the bias of the sub-groups of the APA who put out the report against SOCE.  The issue of protecting minors is false, **particularly since the ethics of the profession already protect minors** against the type of harmful counseling characterized in the law and *licensed* professionals are sensitive to the client's right to self-determination of therapeutic goals.

11.     Informed consent is part of my practice, and I respect my clients' right to self-determination.  I believe that respectful dialogue is possible and that those pushing for this law

demonstrate their intolerance toward those who disagree with them, primarily those with a conservative religious belief system.  Some within the gay community who are pushing for this law want this belief system to be silenced or eliminated in order to prevent "depression, anxiety, self-destructive behavior and suicide," while my experience is that the polarization needs to be eliminated to the benefit of everyone. My educational and work experiences in a diversity of settings throughout the past 40 years have taught me this important lesson.

12.     The law will actually do *more* harm to the public, as it will cause those with *unwanted* same-sex attraction to lose hope that change is possible, since they cannot access those licensed professionals who are best equipped to help people change their unwanted behaviors.  Research indicates there are an equal number of people with *unwanted* same sex attraction as those who embrace a gay identity. The inner conflicts of those with *unwanted* same sex attractions potentially will lead to even more depression, anxiety, self-destructive behavior and suicide due to the lack of access to appropriate mental health services to help them process and resolve their struggles.

13.     **In my 33 years of clinical practice, I have helped many minors and adults work through anxieties and depressions related to their unwanted same-sex attractions**.  While under this law, I will not even be able to refer potential clients to a non-licensed (religious) counselor, as it can be perceived as a "sexual orientation change effort".  Parents will still seek and send clients to non-licensed counselors who are often not as adequately equipped, nor ethically trained, to address their children in the most appropriate therapeutic manner (which *could* include helping the parent to *not* force SOCE on their children, if the child has embraced a deeply held *gay identity*).

14.     **In other words, this law will increase the practices and harm that they are seeking to eliminate!** It should also be noted that no one is denying that some people who receive counseling for a variety of reasons, can get worse as a result due to stirring up and exploring past issues of rejection, hurt and emotional pain in their lives.  This is a part of the informed consent that many psychologists give to their clients prior to beginning any treatment.  SOCE treatment is no different in that regard.

15.     Free speech *is* hindered, as the law is too broad and thus public speeches and seminars by licensed professionals, psychoeducational materials for clients and their parents, including books, journal articles, websites, etc., can all be viewed as an effort to "change a person's sexual orientation or behavior, or to reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender."  I have been involved in all of the above, and my inability to speak or teach on this issue will actually be a set-back to the gay community, as I teach concepts of love and tolerance and a gracious attitude toward anyone with whom we disagree in any matter of theology or behavior.

16.     Social prejudice and intolerance will only increase under a climate of increased polarization, which this law encourages. The First Amendment's protections are ignored by this law.  It hinders me from speaking, teaching, or writing on this issue, since these can be construed as seeking to influence others' sexual behavior. As a licensed psychologist, I am at risk for sharing my religious convictions and psychological opinion.  **For the supporters of this law, diversity seems to translate to "anything but conservative religious beliefs."**

17.     Research on SOCE has been hampered by the political power of some in the gay community who censor this option. Supporting documents for the law, including primarily the APA Task Force Report claim that more research needs to be done on SOCE, yet the law

prohibits it.   Research on SOCE can never be expected to occur under the current political climate, as is self-evident even through the proposal of this law. The Spitzer study (Spitzer, R. L. (2003). *Can some gay men and lesbians change their sexual orientation?* (200 participants reporting a change from homosexual to heterosexual orientation.) *Archives of Sexual Behavior, 32*(5), 403-417) demonstrating the efficacy of SOCE, in spite of his retraction, was a step in the right direction and demonstrated change in sexual behavior and even orientation is possible.   A client of mine was a part of that historic study.

18.      **This law will impact nearly all of the work I do with minors, as the definitions of SOCE are so broad that I fear discussing sexuality at all will put me at risk for violation of the law**.   Anyone who does therapy with adolescents knows that it is a time of identity formation, which for many includes exploring and consideration of their sexual identity.   Experimentation is common, and with our current cultural climate, including the internet and easy access to gay pornography (it cannot be blocked from "smart" phones, and many parents do not monitor their children's internet activity), consideration of homosexual behavior is increasingly frequent in those I counsel.

19.      A female client who may kiss a girlfriend out of curiosity does not mean she regards herself as gay, but may want to process that experience therapeutically. **Neutrality of counseling, as pretended in this law, is a myth.**   Only "gay affirmative" counseling is really permitted. Thus, even exploring and affirming clients' heterosexual interests can, in the future, be construed as "influencing" their behavior in a way that puts me at risk of violation of this law.

20.      Helping a male client process his experience of molestation by another male, including his temptations toward a repetition of that same-sex behavior, can be construed as violation of this law if his heterosexual interests are affirmed and homosexual behavior is discouraged.   Or,

helping a male client who questions in his diary, "Am I gay?" cannot be objectively counseled without future risk, unless the (non)-therapeutic response is to answer in the affirmative.  The risks of homosexual behavior, documented by scientific studies (Centers for Disease Control (2011).  *HIV and AIDS among Gay and Bisexual Men*.  Retrieved from http://www.cdc.gov/nchhstp/newsroom/docs/2012/CDC-MSM-0612-508.pdf), cannot even be discussed due to this law's prohibition on influencing sexual behavior in any way other than what is gay affirmative.

21.    Since the majority of my clients come to me because they are seeking counseling that integrates a Christian worldview, my psychology practice would suffer irreparable harm if I were no longer able to counsel in a manner consistent with a conservative Christian faith.  No parent would refer a minor child if they believed I could only address issues of sexuality in a "gay affirming" manner without regard to their belief system.

22.    My refusal to bring my minor clients into this case is due to my desire to protect them. They are conscious of this law and the restrictions on my current therapeutic options under this law. Neither has chosen to embrace a gay identity, even though this question was addressed during the course of therapy in the past.  Neither of these clients wants others to even know they are in therapy, and it is my clinical judgment that they would suffer significant anxiety and harm if they were influenced to testify in this case.

23.    My private psychology practice for over fifteen years, as well as the practices of other faith-based licensed professionals, have been built on referrals from the clergy and a wide range of Christian sources, and would be irreparably harmed if referrals from those sources were to cease.   The fact that clergy are excluded from this law is irrelevant, since they refer to

professionals in more difficult cases or where expertise is needed, such as with unwanted same-sex attraction.

     I declare under penalty of perjury of the laws of the United States and New Jersey that the foregoing statements are true and accurate.

     Executed this 20th day of September, 2013.

Ronald S. Newman, Ph.D.